**[Cite as *Professional Solutions Ins. Co. v. Novak L.L.P.*, 2020-Ohio-4829.]**

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

PROFESSIONAL SOLUTIONS                  :
INSURANCE COMPANY,

      Plaintiff-Appellee/              :
      Cross-Appellant,

                            No. 108839

      v.                              :

NOVAK L.L.P, ET AL.,                    :

      Defendants-Appellants/          :
      Cross-Appellees.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, VACATED IN PART,
               AND REMANDED
**RELEASED AND JOURNALIZED:** October 8, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-867801

---

### *Appearances:*

The Sweeney Law Firm, L.L.C., and Sean M. Sweeney, *for appellee and cross-appellant.*

Sammon Law, L.L.C., and Colin P. Sammon; Novak L.L.P., and William J. Novak, *for appellants and cross-appellees.*

RAYMOND C. HEADEN, J.:

{¶ 1}  Defendant-appellant/cross-appellee Novak, Pavlik & Deliberato, L.L.P. ("Novak") appeals from the final judgment and order entered following jury verdicts in favor of plaintiff-appellee/cross-appellant Professional Solutions Insurance Company ("PSIC") on a breach of contract claim.[1]  PSIC cross-appeals from that same judgment.  For the reasons that follow, we affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

I.    **Factual and Procedural History**

   **A.  Underlying Malpractice Claim**

{¶ 2}  This case stems from an underlying legal malpractice lawsuit against Novak.  In *Skoda Minotti Co. v. Novak, Pavlik & Deliberato, L.L.P.*, Cuyahoga C.P. No. CV-13-810085 ("*Skoda* litigation"), Skoda Minotti Company ("Skoda") sought payment from Novak on an allegedly unpaid invoice for expert witness services rendered by Skoda for Novak's client, Robert Smith ("Smith").[2]  Smith, who was also a named defendant, filed a third-party complaint against Novak and Novak's former associate, Scott Perlmuter ("Perlmuter"), based upon legal malpractice.  Novak filed a cross-claim against Smith for payment of the invoice.

---

[1] William J. Novak ("attorney Novak"), Thomas C. Pavlik ("Pavlik"), and Matthew Deliberato ("Deliberato"), collectively referenced herein as "partners," were partners of Novak and were named defendants in the lower court case, *PSIC v. Novak, L.L.P., et al.*, Cuyahoga C.P. No. CV-16-867801.  Attorney Novak represented Novak and the partners throughout the course of the case sub judice and served as co-counsel during trial.

[2] Novak's partners were not named individually as defendants in the *Skoda* litigation.

{¶ 3} Novak submitted the legal malpractice claim to PSIC for defense under its lawyer's professional liability policy ("insurance policy"). Under the terms of the insurance policy, PSIC retained Gallagher Sharp L.L.P. ("Gallagher Sharp") who provided Novak's defense throughout the course of the *Skoda* litigation. Per Section I of the insurance policy, PSIC agreed to pay Gallagher Sharp's legal fees in excess of Novak's deductible provision, which totaled $10,000.

{¶ 4} Prior to trial, the trial court dismissed Smith's claims against Novak and its former associate on a motion for judgment on the pleadings. The *Skoda* litigation resulted in a jury verdict against Novak in the amount of $20,347 for Skoda's expert witness fees and in favor of Novak for Smith's indemnity and contribution claims in the amount of $15,184.53. Smith appealed the trial court's decision to grant Novak and Perlmuter's motion for judgment on the pleadings, and Novak appealed the verdict against it. PSIC refused to represent Novak on appeal as it related to the verdict but defended the Smith claim on appeal. On Smith's appeal, we upheld the trial court's award of $15,184.53 to Novak. *Skoda Minotti Co. v. Novak, Pavlik & Deliberato, L.L.P.*, 8th Dist. Cuyahoga No. 101964, 2015-Ohio-2043. Novak eventually settled the appeal of the verdict for $17,000.

**B. Current Appeal**

{¶ 5} According to Section IV, Subsection 3 of the insurance policy, Novak contracted to pay Gallagher Sharp a deductible amounting to the first $10,000 incurred in legal bills during the *Skoda* litigation. Gallagher Sharp submitted three invoices to Novak, totaling $10,000, for services rendered on the *Skoda* litigation.

PSIC also requested Novak satisfy payment of its deductible. Novak refused to pay the $10,000 deductible.[3]

**{¶ 6}** Pursuant to Section VII, Subsection 16 of the insurance policy, on July 17, 2016, PSIC paid Gallagher Sharp the $10,000 deductible owed by Novak. PSIC then retained the Sweeney Law Firm ("Sweeney") and the firm pursued recovery of the deductible from Novak and the firm's partners. No resolution was reached and Sweeney filed a lawsuit, on behalf of PSIC, against Novak and the partners on August 18, 2016, raising three causes of action: breach of contract, unjust enrichment, and declaratory judgment. The declaratory judgment action requested the court to declare the partners "insureds" under the PSIC policy and, therefore, find them jointly and severally liable to PSIC for the deductible and additional outside expenses, including attorney fees, incurred in prosecuting the action.

**{¶ 7}** Novak and the partners filed an answer and counterclaim on January 24, 2017, alleging breach of contract and tortious interference with a contract. Novak and the partners also presented a claim for breach of fiduciary duty in their May 19, 2017 amended answer and counterclaim. On October 27, 2017, PSIC filed a motion for summary judgment as to Count I of the complaint. The trial court denied this motion.

**{¶ 8}** On November 27, 2017, Novak requested leave to file a second amended answer that incorporated an affirmative defense of recoupment and setoff

---

[3] The record contains conflicting reasons for Novak's refusal to submit payment of the deductible: Novak was dissatisfied with Gallagher Sharp's representation during the *Skoda* litigation or the Novak law firm had dissolved and was unable to satisfy payment.

and sought to modify the counterclaim. On December 7, 2017, the trial court denied Novak's motion as untimely because the matter was already scheduled for trial and the amended pleadings would prejudice PSIC.

{¶ 9} On January 29, 2018, both parties filed multiple motions in limine. The court granted Novak's motion in limine that precluded Novak from calling PSIC's counsel as a witness at trial. The trial court also granted Novak's motion in limine that precluded PSIC from introducing evidence or questioning about unrelated lawsuits to show that Novak was previously sued by legal malpractice insurance carriers.

{¶ 10} On February 1, 2018, Novak and the partners filed a motion for partial judgment on the pleadings that argued the insurance policy's outside expense provision was unenforceable under Ohio law. The court denied this motion. On February 5, 2018, Novak and the partners filed a motion for partial judgment on the pleadings that argued the partners were not personally liable for damages under the insurance policy and, therefore, were improperly joined in the action. The trial court journalized its opinion and journal entry on February 15, 2018, and thereby granted the February 5, 2018 motion in part and denied it in part. Specifically, the trial court found that the partners could not be held personally liable for the debts of the partnership. However, they were found to be proper parties to the lawsuit and were not dismissed from the action.

{¶ 11} A bifurcated trial began on February 13, 2018. Following PSIC's presentation of its case, Novak and the partners were granted a motion for directed

verdict as to PSIC's claim of unjust enrichment. Novak and the partners' oral motion for leave to amend the counterclaim to conform to the evidence pursuant to Civ.R. 15(B) was denied. PSIC's motion for directed verdict on Novak's counterclaims for tortious interference and breach of fiduciary duty as it related to Novak's relationship with Vicky Vance was granted on February 20, 2018. On February 21, 2018, the jury returned a verdict against Novak on the breach of contract claim, in the amount of $10,000, and against Novak on its counterclaims. The trial court denied Novak and the partners' oral motions for new trial and mistrial.

{¶ 12} On February 22, 2018, the second portion of the trial began, which addressed the insurance policy's outside expense provision ("OEP"). Pursuant to the OEP, PSIC sought reimbursement for legal expenses that it incurred when collecting Novak's deductible. The jury rendered a verdict on February 23, 2018, in favor of PSIC and against Novak in the amount of $103,379 for reimbursement of outside expenses, or the amounts incurred by PSIC to recover payment of the deductible.

{¶ 13} On March 9, 2018, PSIC filed motions for prejudgment and postjudgment interest. On March 21, 2018, Novak filed a motion for judgment notwithstanding the verdict and a motion for new trial that the trial court denied on April 4, 2018.

{¶ 14} On April 9, 2018, Novak filed with this court a motion for an emergency stay and an expedited alternative writ in *State ex rel. Novak v. Ambrose*,

8th Dist. Cuyahoga No. 107028, 2018-Ohio-2951, challenging the trial court's jurisdiction to proceed to judgment. Due to that filing, the trial court held PSIC's motions for prejudgment and postjudgment interest in abeyance until the court had a final order on the writ. We determined that the trial court had subject-matter jurisdiction to hear the underlying case against the partners and the Ohio Supreme Court affirmed that ruling in *State ex rel. Novak, L.L.P. v. Ambrose*, 156 Ohio St.3d 425, 2019-Ohio-1329, 128 N.E.3d 209.

{¶ 15} On April 11, 2019, PSIC filed a motion for issuance of a final order and the trial court provided a corresponding journal entry that was journalized on June 26, 2019. Within that opinion and journal entry, the trial court granted PSIC's prejudgment and postjudgment motions. As to Count III of the complaint — the declaratory-judgment action — the trial court found that the partners were not liable, under either R.C. 1776.36 or the insurance policy, for the debts of their former partnership and, therefore, found in favor of the partners on PSIC's declaratory judgment claim. PSIC's motion to lift the stay was granted on May 23, 2019, and the case was returned to the trial court's active docket.

{¶ 16} On July 9, 2019, Novak filed a motion to stay execution of judgment, without bond, and requested an oral hearing. Novak filed a timely appeal on July 24, 2019. On July 25, 2019, the trial court's journal entry noted Novak's appeal and stated that the case was stayed and removed from the court's active docket.

{¶ 17} Novak raised these nine assignments of error on appeal:

Assignment of Error 1:  The trial court erred in finding, as a matter of law, that the outside expense provision of the policy is enforceable.

Assignment of Error 2:  The trial court erred in deferring interpretation of the outside expense provision to the jury.

Assignment of Error 3:  The trial court erred by failing to permit [Novak] to amend the pleadings to conform to the evidence.

Assignment of Error 4:  The trial [court] erred by failing to declare a mistrial and/or new trial in response to PSIC's counsel's repeated violations of court orders, ethical mandates and rules of professional conduct resulting in a polluted courtroom environment and verdict generated by passion and prejudice.

Assignment of Error 5:  The trial court erred by admitting unauthenticated legal bills into evidence.

Assignment of Error 6:  The trial court erred in failing to modify and disgorge the fees of PSIC's counsel which were never authenticated and are clearly excessive.

Assignment of Error 7:  The trial court erred when it refused to permit narrative responses to jury interrogatories.

Assignment of Error 8:  The trial court committed error in the face of an inconsistent verdict.

Assignment of Error 9:  The trial court erred when it failed to conduct a hearing and grant new trial in the face of unmistakable juror misconduct.

{¶ 18}  On July 26, 2019, PSIC filed its notice of cross-appeal and raised these

two assignments of error:

Assignment of Error 1:  The trial court erred in granting defendants' motion for summary judgment on the pleadings and holding that there is no individual liability of defendants William Novak, Thomas Pavlik, and Matthew Deliberato for breach of contract.

Assignment of Error 2:  The trial court erred in not requiring a supersedeas bond be posted to protect PSIC.

## II. Law and Analysis

### A. Novak's Assignments of Error

### 1. Enforceability of the Outside Expenses Provision

{¶ 19} In its first assignment of error, Novak argues that PSIC's claim for attorney fees under the OEP of the insurance policy was unenforceable because the term was contained within an adhesion contract of insurance. Specifically, Novak argues that the attorney fees portion of the OEP was nonnegotiable, unilateral in favor of the insurance company, acted as a penalty against Novak, and represented unequal bargaining power between the contracting parties and, therefore, was unenforceable.

{¶ 20} We review an agreement to determine its enforceability under a de novo standard of review. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 35.

{¶ 21} "Ohio courts follow the so-called 'American rule', which requires that each party involved in litigation pay his or her own attorney fees. But there are three well-recognized exceptions to this rule: (1) where statutory provisions specifically provide that a prevailing party may recover attorney fees, (2) where there has been a finding of bad faith, and (3) where the contract between the parties provides for fee shifting." *Simbo Properties v. M8 Realty, L.L.C.*, 2019-Ohio-4361, 149 N.E.3d 941, ¶ 37 (8th Dist.), citing *Keal v. Day*, 164 Ohio App.3d 21, 2005-Ohio-5551, 840 N.E.2d 1139, ¶ 5 (1st Dist.).

**{¶ 22}** The rationale behind allowing parties to contractually agree to a fee-shifting clause is the "fundamental right to contract freely with the expectation that the terms of the contract will be enforced." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 8, quoting *Nottingdale Homeowners' Assn. v. Darby*, 33 Ohio St.3d 32, 36, 514 N.E.2d 702 (1987). The presence of equal bargaining power and the absence of indicators of compulsion or duress suggest the agreement was freely entered. *Wilborn* at ¶ 8. In such a scenario, attorney fee-shifting clauses "are enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." *Nottingdale* at 37.

**{¶ 23}** In contrast, attorney fee-shifting provisions are not supported in contracts of adhesion where the parties do not share equal bargaining power and the nondrafting party is unlikely to negotiate the terms of the contract. *Id.* at fn. 7. An adhesion contract has been defined as a "standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms." *Taylor Bldg. Corp. of Am.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 49.

**{¶ 24}** "To hold [attorney fee-shifting] provisions enforceable [in an adhesion contract] would be contrary to the principle that 'freedom in bargaining and equality of bargaining * * * are the theoretical parents of the American law of contracts.'" *Wilborn* at ¶ 9, quoting *Neal v. State Farm Ins. Cos.*, 188 Cal.App.2d 690, 694, 10 Cal.Rptr. 781 (1961). Typically, insurance contracts that are prepared

on printed forms and drafted by the insurer — the party with the stronger bargaining power — act as adhesion contracts between the insured and the insurer. *M&M Bar Corp. v. Northfield Ins. Co.*, 260 F. Supp.3d 895, 899 (N.D.Ohio 2017), citing *Sekeres v. Arbaugh*, 31 Ohio St.3d 24, 33, 508 N.E.2d 941 (1987); *Winters v. Hart*, 162 Ohio App.3d 15, 2005-Ohio-3367, 832 N.E.2d 753, ¶ 11 (6th Dist.) ("For the most part, insurance policies are adhesion contracts, which are standardized agreements offered to consumers on an essentially 'take it or leave it' basis wherein the buyer has no realistic choice as to its terms."); *State Auto. Mut. Ins. Co. v. Hawk*, 5th Dist. Stark No. CA-6751, 1986 Ohio App. LEXIS 6213, 2 (Mar. 17, 1986) (Insurance contracts, being contracts of adhesion, are strictly construed against the insurer and liberally construed in favor of the insured and the public.); *Smith v. Globe Am. Cas. Co.*, 38 Ohio Misc. 82, 86, 313 N.E.2d 21 (C.P.1973) (One-sided insurance contracts that offer "no true equality of bargaining power" are adhesion contracts.).

{¶ 25} "[A]ttorney fee provisions in contracts are not enforceable '(1) when the parties do not share an equal bargaining position; (2) when the terms of the provision are not freely negotiable; (3) when the attorney fee provision promotes litigation or illegal acts; or (4) when the attorney fee provision acts as a penalty.'" *Flower v. Hall*, 6th Dist. Sandusky No. S-13-033, 2014-Ohio-1671, ¶ 20, quoting *K & A Cleaning, Inc. v. Materni,* 6th Dist. Lucas No. L-05-1293, 2006-Ohio-1989*, ¶* 10. *See also Executive Business Centres v. Transpacific Mfg.*, 6th Dist. Lucas No. L-08-1060, 2009-Ohio-516, ¶ 55. (An attorney-fees provision in a boilerplate

contract was impermissible absent any evidence that the parties specifically negotiated the term.)

{¶ 26} In the instant case, the legal malpractice insurance policy that PSIC drafted on a standardized form and offered to Novak on an essentially "take it or leave it" basis was representative of an adhesion contract. Included within the contract was an OEP that read:

**Section VII. Conditions**

16. Deductible. In the event the deductible is not paid by the **Insured** (or **Named Insured**) within thirty (30) days of demand by **Us**, and **We** make payment to any party those amounts otherwise due from the insured as a result of the deductible, the **Named Insured** agrees to reimburse **Us** for any and all additional outside expenses **We** incur in securing repayment of the deductible.

{¶ 27} We find the attorney fee-shifting portion of the OEP is unenforceable because it was the product of unequal bargaining power, not freely negotiated, and a penalty. "In the insurance context, we have assumed that the insurer, as the drafter of the policy, is always in a stronger bargaining position than is the insured." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 34. The parties had unequal bargaining power with the insurance company, PSIC, representing the position of strength.

{¶ 28} Under an adhesion contract, the terms of a contract are not freely negotiable but are negotiated favorably towards the party with the greater bargaining power. *First Capital Corp. v. G & J Industries*, 131 Ohio App.3d 106, 114, 721 N.E.2d 1084 (8th Dist.1999), *overruled on other grounds*. The terms of the OEP represented a boilerplate provision that was not freely negotiated. PSIC argued that

even though no negotiations occurred, Novak could have attempted to negotiate the terms of the insurance policy. PSIC provided no evidence to support that position and we do not find this argument persuasive. PSIC dictated the terms of the insurance policy and Novak had no ability to negotiate alternate terms. The stipulation to pay attorney fees was not agreed upon through free and understanding negotiation. *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 243, 513 N.E.2d 253 (1987).

{¶ 29} A stipulation to pay attorney fees if there is a breach or other default on the underlying obligation acts "as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default on the obligation." *Id.* at 242. The fee-shifting provision encouraged litigation to establish that Novak did not pay the deductible. Further, the attorney fee-shifting provision served as a penalty against Novak. If Novak failed to pay the deductible and PSIC pursued payment of the deductible, Novak was obligated to pay the insurance company's attorney fees. The attorney fee-shifting clause was included in the OEP for the sole interest of PSIC; Novak gained no benefit from the term.

{¶ 30} While PSIC is correct that fee shifting-provisions for attorney fees are enforceable, they are not enforceable in all circumstances including where the parties enter an adhesion contract such as the one entered by Novak and PSIC. As the Ohio Supreme Court stated, a fee shifting provision in an adhesion contract "where the party with little or no bargaining power has no realistic choice as to

terms, would likewise not be supportable." *Nottingdale Homeowners' Assn.*, 33 Ohio St.3d at 37, fn. 7, 514 N.E.2d 702. The cases cited by PSIC are not persuasive.

{¶ 31} In *Nottingdale*, the court found an attorney fee provision in a lease agreement — a nonadhesion contract — enforceable because it was freely entered and negotiated by the parties. *Id.* The case of *Buckeye Check Cashing, Inc. v. Madison*, 8th Dist. Cuyahoga No. 90861, 2008-Ohio-5124, is distinguishable where an individual executed a written loan contract whereby Madison agreed to terms of a payday loan. The loan document identified the total amount of fees and charges the borrower, Madison, could incur as well as reasonable attorney fees, damages, and other costs and disbursements the lender incurred should it collect on the contract following the borrower's default. This court found the attorney fee provision enforceable because neither party questioned whether they shared equal bargaining power; the parties had the right to freely contract; the term was unambiguous; and the amounts sought by the lender were reasonable. Here, in contrast, Novak has raised the issue of unequal bargaining power and precedent finds insurance contracts typically reflect the stronger bargaining position is held by the insurance company. Whereas the attorney fee provision in *Buckeye Check Cashing* could be considered unambiguous where it was limited to reasonable attorney fees, no such qualifying language applies in the insurance policy's OEP. Lastly, the *Buckeye Check Cashing* court found the amounts reasonable and, therefore, this fact supported a determination that the attorney fee provision was

enforceable. We chose to look at the terms of the insurance policy rather than an after-the-fact assessment of whether the applied fees were reasonable.

{¶ 32} The attorney fee provision contained in the insurance policy's OEP was not enforceable and, therefore, Novak's first assignment of error is well taken. The non-offending portions of the contract remain intact and enforceable. *DeVito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194, ¶ 2 (8th Dist.).

{¶ 33} Our findings under Novak's first assignment of error impact Novak's second and sixth assignments of error. Novak's second assignment of error questioned whether the trial court erred when it submitted to the jury the question whether the terms of the OEP were ambiguous or did the provision clearly consider recovery of attorney fees by PSIC. Novak's sixth assignment of error stated the trial court erred when it failed to modify and disgorge PSIC's attorney fees. Based upon our conclusion that the attorney fee provision under the OEP was unenforceable, the second and sixth assignments of error are rendered moot.

## 2. Amendment of Pleadings

{¶ 34} In its third assignment of error, Novak contends that the trial court erred when it precluded Novak from filing an amended counterclaim during trial.

{¶ 35} Ohio Civ.R. 15(B) governs amended pleadings and reads, in pertinent part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect

the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Civ.R. 15(B).

{¶ 36} "It is axiomatic that cases are to be decided on the issues actually litigated at trial. Although Civ. R. 15 allows for liberal amendment of the pleadings toward that end, the rule will only apply when, as stated therein, the amendment would 'conform to the evidence' and when the issue is tried by either the 'express or implied consent of the parties.'" *State (Bainbridge) ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 44, 448 N.E.2d 1159 (1983). "A trial court has discretion to grant or deny a motion to amend the pleadings under Civ.R. 15(B)." *Simpson v. Sarat Kuchipudi*, 3d Dist. Allen No. 1-05-50, 2006-Ohio-5163, ¶ 21, citing *Spisak v. McDole*, 15 Ohio St.3d 62, 63, 472 N.E.2d 347 (1984).

{¶ 37} We review a trial court's decision regarding amendments of pleading under Civ.R. 15(B) for an abuse of discretion. *Caruso v. Leneghan*, 8th Dist. Cuyahoga No. 99582, 2014-Ohio-1824, ¶ 103, citing *Aztec Internatl. Foods, Inc. v. Duenas*, 12th Dist. Clermont No. CA2012-01-002, 2013-Ohio-450, ¶ 25. An abuse of discretion occurs if the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 38} Novak's proposed counterclaim challenged that PSIC breached the supplementary payments provision when it failed to reimburse Novak for Perlmuter's attendance at depositions, hearings, and the trial of the *Skoda* litigation. The policy section in question provides:

> Section III. Supplementary Payments
>
> Although not Damages, We will pay, in addition to the applicable limit of liability:
>
> 1. Up to $750[.]00 for loss of earnings to each Insured for each day or part of a day of such Insured's attendance, at Our request, at a trial, hearing, mediation or arbitration proceeding involving a Claim against such Insured, but in no event shall the amount payable hereunder exceed $15,000.00 per Insured despite the number of days the Insured is in attendance, or the number of trials, hearings or arbitration proceedings that the Insured is required to attend. In no event will the amount payable hereunder exceed the aggregate amount of $15,000.00 for all Claims covered under this Policy irrespective of the number of Claims, the number of Insureds, or the number of such proceedings.
>
> * * *

(Insurance Policy.)

{¶ 39} During trial, testimony regarding the terms of the supplementary payments provision was introduced and Novak testified that Perlmuter attended depositions, hearings, and trial throughout the *Skoda* litigation for which Perlmuter or the Novak firm should have received supplementary payments. Pursuant to Civ.R. 15(B), Novak moved the trial court to add a counterclaim — seeking a breach of contract under the supplementary payments provision — that conformed to the trial evidence. The trial court denied Novak's motion. Based upon the trial evidence, the trial court's ruling was correct.

{¶ 40} The supplementary payments provision allows for a maximum reimbursement of $750 per day for an attorney's attendance at specified events. A party seeking reimbursement under the supplementary payments provision must submit a request to PSIC that identifies the attorney's hourly rate and the number of days spent at the specified events to trigger the supplementary payments provision. (Tr. 390.) It was Perlmuter or Novak's responsibility to request such payments. Because PSIC never received a reimbursement request for Perlmuter's time, PSIC did not submit payment under the supplementary payments provision. (Tr. 389-390; 551-552.)

{¶ 41} The trial court denied Novak's oral motion to amend the pleadings on the basis that Novak did not introduce sufficient testimony regarding damages. Specifically, the trial court stated no evidence was introduced that stated the amount of time Perlmuter spent at trial. (Tr. 908-909.) In contravention to that statement, Attorney Novak testified to a range of Perlmuter's hourly billable rates and the fact that Perlmuter attended depositions, hearings, and three days of the Skoda trial. (Tr. 761-762.) We agree with the trial court's decision to deny Novak's motion to amend the pleadings, but for alternate reasons.

{¶ 42} To support a breach-of-contract claim, a plaintiff must demonstrate the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *Bertovich v. St. John*, 8th Dist. Cuyahoga No. 96619, 2012-Ohio-475, ¶ 19, citing *Nilavar v. Osborn*, 127 Ohio App.3d 1, 11, 711 N.E.2d 726 (2d Dist.1998), citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649

N.E.2d 42 (2d Dist.1994). Novak did not introduce evidence to demonstrate performance by Novak or a breach of the contract. PSIC would have provided payment under the supplementary payments provision for Perlmuter's time in accordance with the supplementary payments provision. But PSIC was not obligated to make a payment until Perlmuter's missed time and hourly rate were submitted to PSIC. Absent this information, Novak did not fulfill its contract requirement and PSIC did not breach the contract under the supplemental payments provision.

{¶ 43} The evidence did not support the proposed counterclaim and the trial court correctly denied Novak's motion for amendment of the pleadings. "'When a trial court reaches a correct conclusion, even when it does so for incorrect reasons, its judgment must be affirmed. * * *'" *Lindsey v. Schuler*, 7th Dist. Mahoning No. 11-MA-205, 2012-Ohio-3675, ¶ 16, quoting *Kelly v. May Assocs. Fed. Credit Union*, 9th Dist. Summit No. 23423, 2008-Ohio-1507, ¶ 20.

{¶ 44} We find that the trial court did not abuse its discretion when it denied Novak's motion to amend the pleadings to conform to the evidence where Novak failed to produce evidence sufficient to sustain the proposed cause of action. *Palker v. Huntington Natl. Bank*, 8th Dist. Cuyahoga No. 70975, 1997 Ohio App. LEXIS 1526, 18 (Apr. 17, 1997). For the foregoing reasons, Novak's third assignment of error lacks merit and is overruled.

### 3. Mistrial/New Trial Due to Counsel's Conduct

{¶ 45} In its fourth assignment of error, Novak argues that the trial court erred in denying its motion for a mistrial and/or a new trial under Civ.R. 59 alleging that PSIC's counsel made repeated violations of court orders, ethical mandates, and professional rules of conduct. Specifically, Novak contends PSIC's attorney made offensive and derogatory statements about or directed at attorney Novak; invaded attorney Novak's personal space; and disregarded the court's motion in limine. PSIC counters that the verdicts were not the result of passion and prejudice.

{¶ 46} Trial courts have a "'duty in the executive control of the trial to see that counsel do not create an atmosphere which is surcharged with passion or prejudice and in which the fair and impartial administration of justice cannot be accomplished.'" *Pesek v. Univ. Neurologists Assn.*, 87 Ohio St.3d 495, 501, 721 N.E.2d 1011 (2000). "Remarks or arguments that are not supported by the evidence and are designed to arouse passion or prejudice to the extent that there is a substantial likelihood that the jury may be misled are improper." *Roetenberger v. Christ Hosp. & Anesthesia Assocs. of Cincinnati*, 163 Ohio App.3d 555, 2005-Ohio-5205, 839 N.E.2d 441, ¶ 9 (1st Dist.) "Abusive comments directed at opposing counsel, the opposing party, and the opposing party's witnesses should not be permitted." *Id.*

{¶ 47} Only "where gross and abusive conduct occurs, is the trial court sua sponte bound to correct the prejudicial effect of counsel's misconduct." *Pesek* at 501. "Where competent, credible evidence supports the verdict, a trial court's denial of a

motion for a new trial does not constitute an abuse of discretion." *Jawary v. Underwood*, 8th Dist. Cuyahoga No. 108424, 2020-Ohio-1272, ¶ 6, citing *Smith v. Sass, Friedmann & Assocs.*, 8th Dist. Cuyahoga No. 81953, 2004-Ohio-494, ¶ 37. Moreover, counsel's behavior has to be of such a reprehensible and heinous nature that it constitutes prejudice before a court can reverse a judgment because of the behavior. *Hunt v. Crossroads Psych. & Psychological Ctr.*, 8th Dist. Cuyahoga No. 79120, 2001 Ohio App. LEXIS 5388, 8 (Dec. 6, 2001), citing *Kubiszak v. Rini's Supermarket*, 77 Ohio App.3d 679, 688, 603 N.E.2d 308 (8th Dist.1991).

{¶ 48} We find that Sweeney's behavior was not so "reprehensible and heinous" in nature that it resulted in prejudice and, thereby, required the granting of a new trial. Sweeney allegedly stated to his client representative, while both were seated at the plaintiff's table and with the jury present, that "the jury doesn't like this guy." (Tr. 742.) The statement was made with regard to attorney Novak as he walked to the witness stand. The trial judge questioned each juror and alternate juror, individually, and determined none of them overheard the alleged remark. (Tr. 754.) We cannot find Sweeney's remarks tainted the jury when none of the jurors heard the comment. Further, attorney Novak's claims that his personal space was threatened did not present "gross and abusive conduct" that could only be corrected through a new trial. *See Pesek* at 501.

{¶ 49} Novak also took dispute with several comments Sweeney made while questioning attorney Novak. During cross-examination, attorney Novak stated that he used his personal savings to pay his employees when his firm experienced

financial hardship. (Tr. 819.) Sweeney questioned attorney Novak why he did not sell one of his sports cars to help pay for those expenses. (Tr. 819.) An objection was made and sustained by the court. (Tr. 819.) During cross-examination of attorney Novak, Sweeney provided the witness with a copy of the court docket rather than a certified copy. When attorney Novak indicated that a certified copy was required, Sweeney responded by saying, "Yeah. The judge has already ruled. I get that. You want to bust my chops on every procedural point?" (Tr. 835.) The judge immediately instructed the jury to disregard Sweeney's comments and warned Sweeney that he would be sanctioned if his behavior continued. (Tr. 835.)

{¶ 50} Attorney Novak complains that Sweeney exhibited "utter distaste" for him yet, based upon the trial court's comments, attorney Novak displayed similar behavior throughout the trial. (Tr. 847-847.) In fact, the trial court found unprofessional conduct by counsel for both parties and instructed them to behave in a more appropriate manner:

> And again, I would say there has been some unprofessional conduct on all sides here. But I'm going to start operating with a shorter leash so to speak with respect to that, especially in front of the jury. There's been some inappropriate comments made after questions have been answered or as preambles to questions. I would like the case to be cleanly tried, cleanly decided, which means counsel are going to have to keep any personal feelings out of the questions and the answers because I'm sure it's pretty obvious to the jury how you two feel about each other. And I don't think that helps either case. It doesn't do anything to advance the practice of law in the eyes of the citizens who have now volunteered their time and they're wondering why do I have to sit here and listen to this. * * *

(Tr. 847-848.)

{¶ 51} The determination of misconduct by counsel is within the sound discretion of the trial court. *Pierson v. Hermann*, 3 Ohio App.2d 398, 400, 210 N.E.2d 893 (10th Dist.1965). The comments offensive to attorney Novak and raised upon this appeal were objected to and sustained by the trial judge. This court has reviewed the entire record and although some of Sweeney's comments may have been improper, there is no showing of prejudicial error to Novak. Further, the trial judge instructed the jury to consider only the evidence that did not include an attorney's statements during his line of questioning. (Tr. 981.) We presume that a jury follows a judge's instructions, and therefore, even assuming arguendo that any prejudice resulted from Sweeney's comments, we find that the court's instructions cured any prejudice Sweeney's statements may have caused. *Kassay v. Niederst Mgt.*, 2018-Ohio-2057, 113 N.E.3d 1038, ¶ 57 (8th Dist.).

{¶ 52} Novak also contends that Sweeney's conduct necessitated a new trial when he acted in contravention to Novak's motion in limine. The motion in limine precluded PSIC from discussing previous lawsuits where Novak failed to pay its legal malpractice deductible. Yet, during trial, Sweeney engaged in this exchange:

> Sweeney: This isn't the first time your firm has refused to pay a legal malpractice deductible, correct?
>
> Defense Counsel: Objection, your Honor.
>
> The Court: Yeah. That's sustained.

(Tr. 837-838.) Sweeney argued that he did not mention the parties to the prior lawsuits thereby acting within the restrictions of the motion in limine. We find Sweeney's questioning was intended to elicit information about Novak's prior failure

to pay a malpractice deductible, in violation of the court's order.  However, the single question asked before the trial court sustained counsel's objection was not so prejudicial as to require a new trial.  *Ridley v. Fed. Express*, 8th Dist. Cuyahoga No. 82904, 2004-Ohio-2543, ¶ 61 (questions asked in derogation of a motion in limine were not so prejudicial that a new trial was required).

{¶ 53} "The dispositive question is 'whether the verdict was rendered on the evidence, or was influenced by improper remarks of counsel.'"  *Wynn v. Gilbert*, 1st Dist. Hamilton No. C-060457, 2007-Ohio-2798, ¶ 34, quoting *Pesek*, 87 Ohio St.3d at 502, 721 N.E.2d 1011.  PSIC presented competent, credible evidence to support the verdict.  The trial court did not abuse its discretion when it denied Novak's motion for mistrial and/or for new trial.  Thus, Novak's fourth assignment of error is without merit and is overruled.

### 4. Authentication of Legal Bills

{¶ 54} In its fifth assignment of error, Novak argues that PSIC failed to authenticate Gallagher Sharp's legal bills as required by Evid.R. 901 and, therefore, the trial court erred in admitting them into evidence.

{¶ 55} Novak contests whether the Gallagher Sharp legal bills were properly authenticated.  Novak cites case law that addresses fee disputes between a client and attorney where a party must establish the reasonableness and necessity of its attorney's itemized bill.  *Bolek v. Miller-McNeal*, 8th Dist. Cuyahoga No. 103320, 2016-Ohio-1383.  Here, however, Gallagher Sharp's legal bills were not introduced in settlement of a fee dispute nor was the reasonableness or necessity of Gallagher

Sharp's fees at issue. This was a breach of contract claim and the issue was whether Novak breached the contract when it failed to pay PSIC the deductible under the terms of the insurance contract.

{¶ 56} "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 41.

{¶ 57} To prove damages, PSIC introduced the trial testimony of Miller who stated that Novak, pursuant to its malpractice insurance policy, agreed to pay the first $10,000 of its deductible. (Tr. 338.) Miller also testified that PSIC paid $10,000 to Gallagher Sharp when Novak failed to remit payment as required under the insurance policy. (Tr. 383-385; 400.) A copy of PSIC's insurance policy was introduced as an exhibit. (Exhibit No. 1.)

{¶ 58} Authentication of business records is governed by Evid.R. 803(6). Evid.R. 901(B)(10). The evidence rule does not require the individual introducing a business record to have actually drafted the document. *Ameritrust Co. Natl. Assn. v. Renaudin*, 8th Dist. Cuyahoga No. 54409, 1988 Ohio App. LEXIS 4137, 3 (Oct. 13, 1988). The "'[r]ecords need not be actually prepared by the business offering them if they are received, maintained, and relied upon in the ordinary course of business' and 'incorporated into the business records of the testifying entity.'" *Ohio Receivables, L.L.C. v. Dallariva*, 10th Dist. Franklin No. 11AP-951, 2012-Ohio-3165,

¶ 20, quoting *Shawnee Assocs., L.P. v. Shawnee Hills*, 5th Dist. Delaware No. 09-CAE-05 0051, 2010 Ohio 1183, ¶ 50.

**{¶ 59}** The record demonstrates that the Gallagher Sharp bills satisfy the evidence rules and were properly introduced at trial. Therefore, Novak's fifth assignment of error lacks merit and is overruled.[4]

### 5. Narrative Responses to Jury Interrogatories

**{¶ 60}** In its seventh assignment of error, Novak contends that the trial court was obligated to include its proposed narrative jury interrogatory to establish whether PSIC performed under the supplementary payments provision of the insurance policy.

**{¶ 61}** We review the submission of jury interrogatories for abuse of discretion. *Johnson v. U.S. Title Agency, Inc.*, 8th Dist. Cuyahoga No. 108547, 2020-Ohio-4056, ¶ 71. "'Appellate courts should defer to trial judges, who witnessed the trial firsthand and relied upon more than a cold record to justify a decision.'" *Id.* at ¶ 72, quoting *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶ 36.

**{¶ 62}** Civ.R. 49(B) governs jury interrogatories and reads, in pertinent part:

> The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests

---

[4] In its reply brief, Novak challenges the admissibility of Sweeney's bills. Because we found under Novak's first assignment of error that the attorney fee portion of the OEP is unenforceable, the admission of Sweeney's bills is moot.

prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law.

Civ. R. 49(B). However, Civ.R. 49(B) does not require a trial judge to simply submit all interrogatories proposed by counsel. *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 64 Ohio St.3d 97, 107, 592 N.E.2d 828 (1992), citing *Ragone v. Vitali & Beltrami, Jr., Inc.*, 42 Ohio St.2d 161, 165, 327 N.E.2d 645 (1975), citing the decision of the court below in that case.

> "[T]he court still has the discretion to reject interrogatories that are ambiguous, confusing, redundant, or otherwise legally objectionable." *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 1996 Ohio 159, 662 N.E.2d 1, citing *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 1992 Ohio 109, 592 N.E.2d 828. "Proper jury interrogatories must address determinative issues and must be based upon trial evidence." *Ramage*, 64 Ohio St.3d 97, 107, 1992 Ohio 109, 592 N.E.2d 828; see, also, *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 165, 327 N.E.2d 645-166 ("[a]uthority is still vested in the judge to control the substance and form of the questions, and if the interrogatories are not based on the evidence, are incomplete, ambiguous or otherwise legally objectionable, the judge need not submit them to the jury.").

*Marketing Assocs. v. Gottlieb*, 8th Dist. Cuyahoga No. 92292, 2010-Ohio-59, ¶ 49.

{¶ 63} Here, Novak proposed a narrative jury interrogatory that addressed whether PSIC performed under the supplementary payments provision of the insurance policy. As was within its purview, the trial court rejected the narrative interrogatory on the basis that it was confusing. The trial court properly instructed the jury on the necessary elements of the parties' causes of action and did not abuse its discretion when it refused to present the proposed narrative jury interrogatories.

For the foregoing reasons, Novak's seventh assignment of error lacks merit and is overruled.

### 6. Jury Interrogatories Inconsistent with the Verdict

{¶ 64} In its eighth assignment of error, Novak maintains that the trial court abused its discretion when it denied Novak's motion for mistrial because juror No. 5's execution of verdict form 1 was inconsistent with her completion of jury interrogatories C, F, G, and H.

{¶ 65} Civ.R. 49(B) reads, in pertinent part:

> When the general verdict and the answers [to interrogatories] are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.

Civ.R. 49. "The purpose of an interrogatory is to 'test the jury's thinking in resolving an ultimate issue so as not to conflict with its verdict.'" *Freeman v. Norfolk & W. Ry.*, 69 Ohio St.3d 611, 613, 635 N.E.2d 310 (1994), quoting *Riley v. Cincinnati,* 46 Ohio St.2d 287, 298, 348 N.E.2d 135 (1976). When reasonably possible, a trial court should seek to reconcile the responses to a general verdict and an interrogatory. *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 9th Dist. Summit No. 25632, 2017-Ohio-7846, ¶ 9. Where the general verdict and answers to special interrogatories are inconsistent, the court may enter judgment either in accordance with the answers to special interrogatories notwithstanding the general verdict; return the jury for further consideration; or order a new trial.

{¶ 66} However, in civil actions, a concurrence of three-fourths or more of the jury renders a verdict. Civ.R. 48. The proposed invalidity of juror No. 5's vote did not alter the general verdict in favor of PSIC where the remaining seven votes — that constituted more than three-fourths of the jury — found in favor of PSIC on the general verdict and provided consistent responses to the special interrogatories. *Ball v. Stark*, 10th Dist. Franklin No. 11AP-177, 2013-Ohio-106, ¶ 21. Accordingly, we find Novak's eighth assignment of error lacked merit and is overruled.

### 7. Juror Misconduct

{¶ 67} In its ninth assignment of error, Novak argues that the trial court erred when it denied its motion for new trial that was premised on juror misconduct. Specifically, Novak maintains that juror misconduct occurred when juror No. 3 showed bias towards PSIC's counsel and was dishonest during voir dire as to whether she had a connection with anyone in the insurance industry.

{¶ 68} A postverdict motion for mistrial is analyzed under Civ.R. 59. Civ.R. 59(A) permits a new trial when the following occurs:

> (1) Irregularity in the proceedings of the court [or] jury, * * * or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
>
> (2) Misconduct of the jury or prevailing party;
>
> * * *

Civ.R. 59(A). In addition, the rule contains a catchall provision that a new trial may be granted "in the sound discretion of the trial court for good cause shown." *Jones v. Cleveland Clinic Found.*, 2020-Ohio-3780, ¶ 29, citing Civ.R. 59(A).

**{¶ 69}** "'Misconduct of a jury will not be presumed, but must be affirmatively proved. The law will presume proper conduct on their part.'" *Rollison v. Humility of Mary Health Partners*, 11th Dist. Trumbull No. 2016-T-0090, 2017-Ohio-7959, ¶ 12, quoting *First Natl. Bank of Omaha v. iBeam Solutions, L.L.C.*, 2016-Ohio-1182, 61 N.E.3d 740, ¶ 61 (10th Dist.), quoting *Lund v. Kline*, 133 Ohio St. 317, 320, 13 N.E.2d 575 (1938). Where substantial competent and credible evidence supports a jury verdict, the trial court will presume the verdict is correct and deny a motion for new trial. *Harris*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, at ¶ 19, citing *McLeod v. Mt. Sinai Med. Ctr.*, 166 Ohio App.3d 647, 2006-Ohio-2206, 852 N.E.2d 1235, ¶ 28 (8th Dist.), *rev'd on other grounds,* 116 Ohio St.3d 139, 2007-Ohio 5587, 876 N.E.2d 1201. The complaining party must affirmatively demonstrate prejudice resulting from jury misconduct before a court will set aside a verdict. *Rollison* at ¶ 17, citing *State v. Kehn*, 50 Ohio St.2d 11, 19, 361 N.E.2d 1330 (1977). Motions for new trial based upon juror misconduct are reviewed for an abuse of discretion. *Elsner v. Birchall*, 2018-Ohio-2521, 114 N.E.3d 791, ¶ 11 (8th Dist.).

**{¶ 70}** Novak, through affidavits of its attorneys, alleged juror misconduct or irregularity by juror No. 3. Novak alleged that "from the inception of her jury duty, juror No. 3 exhibited a clear and obvious propensity to favor the [sic] PSIC. Throughout the case, she continued to smile at counsel while exhibiting an absolute disdain for [Novak]." (Appellants' brief at 37.) Additionally, after the verdict was announced, Novak's counsel overheard juror No. 3 speaking with the trial judge. Juror No. 3 stated that she always wanted to meet the judge due to his past affiliation

with the Cleveland Browns and she wanted to be seated on a jury in his courtroom since her relative had been a client of the trial judge's former law firm. Counsel for Novak informed the trial court in an informal conversation — outside the judge's chambers — that juror No. 3 favored PSIC and was negative towards Novak.

{¶ 71} Following announcement of the verdict, Novak's attorneys went to a local restaurant where they observed juror No. 3 seated at the bar with a gentleman. Counsel believed the man was involved in the insurance business. Novak alleges that all jurors were asked during voir dire whether they had a relationship with any person involved in the legal or insurance industries and juror No. 3 answered that question in the negative. Based upon that statement, Novak proposes that juror No. 3 was dishonest during voir dire. While at the restaurant, Novak's counsel also overheard the bar manager ask Juror No. 3's gentleman friend, while the juror was in the restroom, whether it was the last day of jury duty. Based upon that comment, counsel infers that juror No. 3 discussed the proceedings and status of the trial with the bar manager thereby invalidating the verdict.

{¶ 72} A review of the transcript reveals the jurors were asked during voir dire whether they had a relationship or familiarity with anyone in the courtroom, including the attorneys, or if anyone worked for an insurance company. (Tr. 111, 118.) Absent the presentation of a question asking whether the potential jurors had a relationship with someone in the insurance industry, Novak's allegation on this issue is moot.

**{¶ 73}** As to the remainder of Novak's allegations, we find none of the comments or acts made by the juror represented misconduct or irregularity. There is no evidence that juror No. 3 acted improperly or breached her oaths. With respect to Civ.R. 59(A)'s catchall provision, it was within the trial court's sound discretion to determine whether a new trial was necessitated. Civ.R. 59(A). We find no abuse of discretion by the trial court to deny Novak's motion for new trial and, thus, overrule Novak's ninth assignment of error.

### B. PSIC's Assignments of Error

### 1. Personal Liability of Partners

**{¶ 74}** In its first cross-assignment of error, PSIC argues that the trial court erred when it granted Novak and the partner's 12(C) motion for partial judgment on PSIC's claim for declaratory judgment under Count III of its complaint and found the partners were not liable for the partnership's obligations under the insurance policy pursuant to either statute or contract. PSIC maintains the partners were contractually liable for the deductible under the plain language of the insurance policy.

**{¶ 75}** Initially, we note that PSIC did not waive this issue on appeal since a ruling on a Civ.R. 12(C) motion does not require the nonmoving party to object during open court.

**{¶ 76}** As to Novak's Civ.R. 12(C) motion, a judgment on the pleadings raises only questions of law that are reviewed under a de novo standard of review. *Cohen*

*v. Bedford Hts.*, 8th Dist. Cuyahoga No. 101739, 2015-Ohio-1308, ¶ 7. Courts review

Civ.R. 12(C) motions under a Civ.R. 12(B)(6) standard:

> The Ohio Supreme Court has held that a Civ.R. 12(C) motion for judgment on the pleadings is to be considered as if it were a belated motion to dismiss for failure to state a claim upon which relief can be granted. *State ex rel. Pirman v. Money* (1994), 69 Ohio St.3d 591, 592, 1994-Ohio-208, 635 N.E.2d 26. Therefore, we will analyze the [Civ.R 12(C) motion] under the same principles which we would apply in reviewing a Civ.R. 12(B)(6) dismissal.

*Black v. Coats*, 8th Dist. Cuyahoga No. 85067, 2005-Ohio-2460, ¶ 6. "In order to

dismiss a complaint for failure to state a claim upon which relief can be granted, the

court must find beyond doubt that plaintiff can prove no set of facts warranting relief

after it presumes all factual allegations in the complaint are true, and construes all

reasonable inferences in plaintiff's favor." *Black* at ¶ 7, citing *State ex rel. Seikbert

v. Wilkinson*, 69 Ohio St.3d 489, 490, 633 N.E.2d 1128 (1994).

{¶ 77} PSIC alleged in its complaint that it issued an insurance policy to

Novak and the partners and, pursuant to Section IV, Paragraph 3 of the policy,

Novak and the partners were obligated to pay the $10,000 deductible, which PSIC

advanced for defendants' legal representation in the *Skoda* litigation. Under Count

III of the complaint, PSIC sought a declaration that the partners were insureds

under the policy and were jointly and severally liable for the $10,000 deductible and

any related collection fees, including attorney fees. Novak and the partners'

Civ.R. 12(C) motion argued that the individual partners were not named insureds

under the terms of the insurance policy; the partners had no individual liability

under the insurance policy pursuant to R.C. 1775.14; and the partners should be dismissed from the lawsuit.

{¶ 78} Through its February 15, 2018 journal entry, the trial court granted, in part, and denied, in part, Novak's Civ.R. 12(C) motion for judgment on the pleadings. The trial court determined the partners were subject to the provisions of R.C. Chapter 1776 and pursuant to R.C. 1776.36(C), the partners could not be held personally liable for the debts of the partnership. The trial court found that the partners were proper parties to the lawsuit and, therefore, the partners were not dismissed from the case and the lawsuit was to proceed to trial against the partners in their capacity as individual members of Novak.[5] In response to PSIC's motion for a final order, the trial court filed an opinion and judgment entry — journalized on June 26, 2019 — that again addressed PSIC's declaratory judgment action. The trial court reiterated that the partners were not individually liable for the debts of their former partnership, Novak, either by statute or the insurance policy.

{¶ 79} PSIC challenges the trial court's ruling on Novak's Civ.R. 12(C) motion or, in other words, its decision that under R.C. 1776.36(C), the partners could not be held personally liable for the debts of the partnership.

---

[5] Following trial, Novak filed a writ of prohibition with this court, in *Novak*, 8th Dist. Cuyahoga No. 107028, 2018-Ohio-2951, and that decision was appealed to the Ohio Supreme Court in *Novak, L.L.P.*, 156 Ohio St.3d 425, 2019-Ohio-1329, 128 N.E.3d 209. Those decisions stemmed from an allegation that the trial court lacked subject matter jurisdiction on the claims against the partners and did not address the merits of the underlying cases. The rulings on the writ of prohibition are not dispositive on the trial court's granting of Novak's Civ.R. 12(C) motion.

**{¶ 80}** Initially, we look to the terms of the insurance policy. Paragraph 3 of Section IV, Limits of Liability and Deductible, is relevant to our inquiry and states:

3. Deductible

The deductible amount stated in the Declarations for "each claim" applies to each and every **Claim** first made against the Insured and reported in writing to the **Company** during the current **Policy Period** or any applicable **Extended Reporting Period**. Such deductible amount shall first apply to the payment of **Damages** and **Claim Expenses**, and shall be paid by the **Named Insured**, or upon the **Named Insured's** failure to pay, jointly and severally by all **Insureds**. The limits of liability set forth in the Declarations are in addition to and in excess of such deductible amount.

**{¶ 81}** The deductible is to be paid by the named insured who undisputedly is Novak. In the event Novak fails to pay the deductible, all insureds are jointly and severally liable for that amount. Under Paragraph 9 of Section V, Definitions, the insurance policy provides this definition for an insured:

**Insured** means:

a. The entity or person listed on the Declarations as the **Named Insured** and any **Predecessor Firm** thereof, but only in rendering or failing to render **Professional Legal Services** on behalf of the **Named Insured** or **Predecessor Firm**;

b. Any current partner, director, stockholder, shareholder, or employed lawyer of any person or entity specified in item a. above; but only in rendering or failing to render **Professional Legal Services** on behalf of the **Named Insured** or **Predecessor Firm**;

* * *

d. Any lawyer who is a past partner, officer, director, stockholder, shareholder, employee of the **Named Insured** or **Predecessor Firm**, but only in relation to **Professional Legal Services** rendered on behalf of the **Named Insured**;

* * *

f. Any lawyer who has retired from the Named Insured, but only arising from **Professional Legal Services** rendered on behalf of the **Named Insured** or **Predecessor Firm** before retirement, which are otherwise covered by this **Policy**; and

\* \* \*

**{¶ 82}** According to the above definitions, partners are considered insureds only for services the partner rendered or failed to render on behalf of the firm. An insured did not include partners who were not at fault in creating the insurable claim. Perlmuter was Novak's attorney of record on that litigation and he is not a party to the current lawsuit. The partners did not provide legal services in the underlying *Skoda* litigation. Thus, none of the partners were insureds under the insurance policy and were not obligated contractually to pay the deductible should the named insured —Novak — fail to pay.

**{¶ 83}** Further, no liability attached to the partners under the Uniform Partnership Act, R.C. Chapter 1776. R.C. 1776.36 provides:

(A) Except as otherwise provided in divisions (B) and (C) of this section, all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law.

(B) A person admitted as a partner into an existing partnership is not personally liable for any partnership obligation incurred before the person's admission as a partner.

(C) An obligation of a partnership incurred while the partnership is a limited liability partnership, whether arising in contract, tort, or otherwise, is solely the obligation of the partnership. A partner is not personally liable, directly or indirectly, by way of contribution or otherwise, for such an obligation solely by reason of being or acting as a partner. This division applies notwithstanding anything inconsistent in the partnership agreement that existed before any vote required to

become a limited liability partnership under division (B) of section 1776.81 of the Revised Code.

R.C. 1776.36. Novak's liability for the deductible payable to PSIC was a contractual obligation of the partnership. Per R.C. 1776.36(C), Novak was solely responsible for that contractual obligation, not the partners, individually.

{¶ 84} R.C. 1776.37(D) further states a judgment creditor can levy execution against a partner's assets to satisfy a judgment against the partnership only where the partner is personally liable for the claim under R.C. 1776.36 and one of the five conditions delineated in R.C. 1776.37(D)(1)-(5) are met. Since the partners were not personally liable for the deductible under R.C. 1776.36, a judgment creditor could not levy execution to recover that obligation from the partners.

{¶ 85} We find that under both the insurance policy and R.C. 1776.36(C), the partners were not personally liable for the debts of Novak and, therefore, there was no error in the court's partial granting of Novak's' Civ.R. 12(C) motion. PSIC's first cross-assignment of error lacks merit and is overruled.

### 2. Supersedeas Bond

{¶ 86} In PSIC's second cross-assignment of error, it argues that the trial court erred when it stayed execution of the judgment without requiring Novak to post a supersedeas bond.

{¶ 87} A stay of execution is governed by Civ.R. 62 that provides, in pertinent part:

(B) Stay upon appeal.

When an appeal is taken the appellant may obtain a stay of execution of a judgment or any proceedings to enforce a judgment by giving an adequate supersedeas bond. The bond may be given at or after the time of filing the notice of appeal. The stay is effective when the supersedeas bond is approved by the court.

{¶ 88} "Pursuant to [Civ.R. 62], [a party is] entitled to a stay of the judgment as a matter of right. The lone requirement of Civ.R. 62(B) is the giving of an adequate supersedeas bond." *State ex rel. State Fire Marshal v. Curl*, 87 Ohio St.3d 568, 571, 722 N.E.2d 73 (2000). Filing a notice of appeal does not divest a trial court of jurisdiction to rule on a pending stay of execution. *Van Wie v. Kreppner*, 8th Dist. Cuyahoga No. 53352, 1988 Ohio App. LEXIS 324, 8 (Jan. 28, 1988).

{¶ 89} On July 9, 2019, Novak filed a motion to stay execution of judgment, without bond, and requested an oral hearing. No hearing was held on that motion. Novak filed a timely appeal on July 24, 2019. On July 25, 2019, the trial court's journalized entry noted Novak's appeal and stated the case was stayed and removed from the court's active docket:

Pursuant to notice of appeal, filed 07/24/2019, case is stayed and removed from the court's active docket. Pursuant to Civ.R. 58(B), the clerk of courts is directed to serve this judgment in a manner prescribed by Civ.R. 5(B). The clerk must indicate on the docket the names and addresses of all parties, the method of service, and the costs associated with this service.

(July 25, 2019 journal entry.)

{¶ 90} A court speaks through its journal entry and the trial court's July 25, 2019 journal entry indicated the trial court granted the stay of execution. *State ex rel. Worcester v. Donnellon*, 49 Ohio St.3d 117, 118, 551 N.E.2d 183 (1990).

{¶ 91} Novak argues that the trial court granted its motion to stay the execution in the July 25, 2019 journal entry and the trial court was permitted to waive the bond, citing to *Irvine v. Akron Beacon Journal*, 147 Ohio App.3d 428, 2002-Ohio-2204, 770 N.E.2d 1105 (9th Dist.). The facts sub judice are not analogous to those found in *Irvine* where the trial court's waiver of a bond in a stay of execution of judgment, pending appeal, was not an abuse of discretion because the successful plaintiffs were "adequately secured by the Defendant's solvency" and had well-established ties to the community. *Id.* at 451.

{¶ 92} Similarly, in *Whitlatch & Co. v. Stern*, 9th Dist. Summit No. 15345, 1992 Ohio App. LEXIS 4218 (Aug. 19, 1992), the court found no supersedeas bond was required where the amount in controversy was held in escrow, and accordingly, the absence of a bond could not impact the substantive rights of either party. *Id.* at 25. *Compare with Ohio Carpenters' Pension Fund v. La Centre, L.L.C.*, 8th Dist. Cuyahoga Nos. 86597 and 86789, 2006-Ohio-2214 (On appeal, trial court's denial of an order of stay of execution pending appeal was affirmed where movant argued financial hardship to his family should he be required to post a supersedeas bond but offered no proof in support of his assertions.).

{¶ 93} Here, however, there is no indication that Novak had the financial wherewithal to satisfy the judgment so that a bond was not needed. In fact, the Novak firm dissolved and was no longer in existence at the time of trial. Novak did not present any extraordinary circumstances to indicate a supersedeas bond was not

required.  Thus, the trial court's failure to deny Novak's stay of execution without a bond was an abuse of discretion.

{¶ 94} For the foregoing reasons, we find PSIC's second cross-assignment of error has merit and remand the case to the trial court for proceedings consistent with this opinion.

{¶ 95} As a result of the foregoing, we vacate the portion of the jury verdict that awarded PSIC $103,379 on a claim for reimbursement of outside expenses incurred in the collection of its deductible due under the insurance policy.  We also vacate the award of prejudgment interest and postjudgment interest on that amount.  We remand for the trial court to issue an updated journal entry to reflect the vacated jury verdict and awards for prejudgment interest and postjudgment interest.  We also remand this case on the issue of a supersedeas bond as raised in PSIC's second cross-assignment of error.

{¶ 96} Judgment affirmed in part, vacated in part, and remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellee/cross-appellant and appellants/cross-appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR