[Cite as *Elsner v. Birchall, M.D.*, 2018-Ohio-2521.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No.   106524

**FREDRICK S. ELSNER**

PLAINTIFF-APPELLANT

vs.

**CURTIS L. BIRCHALL, M.D., ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-859954

**BEFORE:**   Boyle, J., E.A. Gallagher, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:**   June 28, 2018

**ATTORNEYS FOR APPELLANT**

Dale R. Friedland
Rapoport Spitz Friedland & Courtney
27600 Chagrin Boulevard, Suite 340
Woodmere, Ohio   44122

Jonathan Misny
Thomas J. Misny
7319 Eagle Mills Road
Waite Hill, Ohio   44094


**ATTORNEYS FOR APPELLEES**

Holly M. Wilson
Adam J. Davis
Martin T. Galvin
Reminger Co., L.P.A.
101 West Prospect Avenue, Suite 1400
Cleveland, Ohio   44115-1093

MARY J. BOYLE, J.:

{¶1} Plaintiff-appellant, Frederick S. Elsner, appeals the trial court's denial of his motion for a new trial and raises one assignment of error for our review:

> The trial court erred in denying the Plaintiff's Motion for a New Trial based on juror misconduct and the manifest weight of the evidence.

{¶2} Finding no merit to his assignment of error, we affirm.

## I. Procedural History and Factual Background

{¶3} In December 2014, Elsner visited Birchall and Associates, L.L.C., and underwent the Priapus procedure.[1] Dr. Curtis L. Birchall performed the procedure, and Elsner was discharged the same day. Over the course of the next month, Elsner developed a fever and other symptoms. He eventually went to the emergency room at the Cleveland Clinic, where he was diagnosed with scrotal gangrene and underwent "an extensive scrotal debridement under general anesthesia."

{¶4} On March 7, 2016, Elsner filed a complaint against Dr. Birchall, Birchall and Associates, L.L.C. (d.b.a. The Fountain Clinic), and Katina Walker, setting forth claims for medical malpractice and fraud due to performance of an unauthorized medical procedure outside of the standard of care for treatment of male impotence, with misrepresentation and lack of scientific substantiation of promised results.

{¶5} Walker moved to dismiss the claims against her under Civ.R. 12(B)(6), which Elsner did not oppose and the court granted.

---

[1] According to a brochure titled "Male Enhancement: Patient Information About the Priapus Shot" and attached to Elsner's complaint as an exhibit, the Priapus shot is an injection of a patient's platelet-rich plasma into the patient's corpus cavernosa, which is a structure in the penis that causes an erection. The brochure states that the shot "enhances blood flow to the corpus cavernosa," resulting in "a firmer, harder erection."

{¶6} The parties engaged in lengthy pretrial motion practice and discovery. The case was eventually reassigned from the original trial judge to a visiting judge based on a scheduling conflict. The case proceeded to a trial by jury. The jury returned a verdict in favor of the defendants and was polled in open court and on the record.

{¶7} Three days later, Elsner filed a motion for a new trial as well as two motions for judgment notwithstanding the verdict. Elsner's motion for a new trial argued that a member of the jury engaged in misconduct and that the weight of the evidence did not support the judgment. The defendants filed a brief in opposition to those motions. The trial court ordered the transcript of the voir dire portion of the trial. The original trial judge, who did not preside over the trial, denied Elsner's motions for judgment notwithstanding the verdict as well as his motion for a new trial.

{¶8} It is from the trial court's denial of his motion for a new trial that Elsner now appeals.

## II. Law and Analysis

{¶9} In his sole assignment of error, Elsner argues that the trial court erred when it denied his motion for a new trial. In support of his assignment of error, Elsner argues that the court should have granted him a new trial because (1) juror No. 2 failed to disclose that she was previously represented by the same law firm representing Birchall, (2) juror No. 2 worked on word puzzles during the trial and bullied other jury members into finding for Birchall, (3) the judgment was against the manifest weight of the evidence, and (4) the judge who presided over the trial, not the original trial judge, should have ruled on his motion for a new trial.

{¶10} Under Civ.R. 59(A), a court may grant a new trial based on "[m]isconduct of the jury." A court may also grant a new trial within its "sound discretion * * * for good cause

shown." *Id.* Nevertheless, "motions for new trial are not to be granted lightly." *State v. Jerido*, 8th Dist. Cuyahoga No. 72327, 1998 Ohio App. LEXIS 730, 5 (Feb. 26, 1998), citing *Toledo v. Stuart*, 11 Ohio App.3d 292, 465 N.E.2d 474 (6th Dist.1983).

{¶11} We review a motion for a new trial based on jury misconduct under Civ.R. 59(A)(2) for an abuse of discretion. *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶ 36. A trial court's denial of a motion for a new trial does not constitute an abuse of discretion if competent, credible evidence supports the verdict. *Smith v. Sass, Friedmann & Assocs.*, 8th Dist. Cuyahoga No. 81953, 2004-Ohio-494, ¶ 37.

{¶12} Analyzing allegations of juror misconduct requires a two-step inquiry. First, a trial court "must determine whether misconduct actually occurred." *Jerido* at 6. If the trial court finds misconduct, then it must determine "if the misconduct materially affected the [complaining party's] substantial rights." *Id.*; *see also Pittock v. Kaiser Found. Health Plan*, 8th Dist. Cuyahoga No. 72628, 1998 Ohio App. LEXIS 2175, 15 (May 14, 1998) ("[A] judgment will not be reversed because of alleged juror misconduct unless prejudice to the complaining party is shown.").

### A. Failure to Disclose

{¶13} In support of his assignment of error, Elsner first argues that juror No. 2 engaged in misconduct when she failed to disclose that she was previously represented by the Reminger law firm in a medical malpractice case after Birchall's counsel revealed that he worked for Reminger. In his brief, he cites to *Burton v. Unifirst Corp.*, 8th Dist. Cuyahoga No. 98876, 2013-Ohio-2330, and *State v. Mack*, 8th Dist. Cuyahoga No. 93091, 2010-Ohio-1420.

{¶14} In *Burton*, we reversed the trial court's denial of the plaintiff's motion for a new trial, which alleged juror misconduct. The record showed that one of the jurors, who was a

medical doctor, failed to "reveal that he had been previously sued several times, which could have caused him to be biased in favor of the defendant." *Id.* at ¶ 9. We found that the juror "did not merely fail to disclose the fact that he was sued in the past, he affirmatively made a misrepresentation by boasting that 'I'm proud to say in 33 years of practice I've never been sued for malpractice.'" *Id.* at ¶ 11. As a result, we found that it was "not a case where the juror merely forgot to disclose a material fact[, but was] a case where a juror answered a voir dire question dishonestly." *Id.*

{¶15} In *Mack*, the defendant moved for a new trial after a jury convicted him of rape and kidnapping. Immediately after the jury read its verdict, the court held a hearing concerning alleged juror misconduct, specifically concerning a conversation that a jury member had with the defendant's wife about the defendant's character and her belief that her husband was innocent. The trial court questioned both the juror and the defendant's wife, but ultimately denied the defendant's motion, finding that while the juror engaged in misconduct, that misconduct was harmless and not prejudicial to the defendant. On appeal, we reversed the trial court's ruling because it deprived the defendant of "an opportunity to meet his burden of establishing prejudice due to Juror Number 12's misconduct[.]" *Id.* at ¶ 14. We stated that the trial court, after finding that the jury member engaged in misconduct, "should have then allowed [the defendant] to present evidence of prejudice[,]" including the opportunity to question the defendant's wife and members of the jury. *Id.* at ¶ 33 and 35.

{¶16} In this case, during voir dire, the court introduced both parties, Birchall and Elsner, as well as the parties' attorneys, and asked the jurors if they knew or recognized any of them. None of the jurors indicated that they did. During those introductions, the court did not identify the law firms where the attorneys worked.

{¶17} Later, the court asked whether any of the jurors had been involved in a medical malpractice case, to which juror No. 2 indicated she had. Juror No. 2, who was an adult nurse practitioner at the Cleveland V.A. Medical Center, explained, "I have been deposed numerous times in cases as part of hospital staff. I was not named in them. I was named along with the physician in private practice. It was a malpractice suit for a patient in a nursing home. The family brought suit. We were dismissed from the case." Despite this, juror No. 2 informed the trial court that she could be fair and impartial to both sides. Although not precluded from doing so, neither Elsner's nor Birchall's counsel further questioned juror No. 2 as to those lawsuits.

{¶18} During trial, Birchall's counsel, who was from the Reminger law firm, called Dr. Keith Armitage to the stand and asked the doctor if he had reviewed cases for Reminger in the past. The doctor responded that he had and explained that "Reminger is a big firm with lots of offices over Ohio" and that during his 22 years of practicing medicine, he was "sure" that he reviewed some of Reminger's cases. Elsner did not object or move for a mistrial at that time.

{¶19} After review, we find that both of Elsner's cases are distinguishable from the instant case. Unlike *Burton*, there is no proof in the record that juror No. 2 answered any of the voir dire questions asked by the trial court or by counsel dishonestly. *Burton*, 8th Dist. Cuyahoga No. 98876, 2013-Ohio-2330. Unlike *Mack*, the information that was potentially prejudicial to Elsner's case could have properly been examined during voir dire. *Mack*, 8th Dist. Cuyahoga No. 93091, 2010-Ohio-1420.

{¶20} Further, "the overriding purpose of voir dire is to question prospective jurors and determine whether a potential juror meets both the statutory qualification of a juror and is 'free from bias or prejudice for or against either litigant.'" *State v. Barker*, 6th Dist. Wood No. WD-15-035, 2016-Ohio-8006, ¶ 37, quoting *Vega v. Evans*, 128 Ohio St. 535, 191 N.E. 757

(1934). "'[C]ounsel is in the best position to determine whether any potential juror should be questioned and to what extent.'" *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 111, quoting *State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765 (2001). "Voir dire is largely a matter of strategy and tactics." *State v. Lindsey*, 87 Ohio St.3d 479, 489, 721 N.E.2d 995 (2001).

**{¶21}** Here, as noted by the trial court, Elsner's "counsel had ample opportunity to question Juror No. 2 as well as other jurors [and] was able to explore anything he felt might be relevant or detrimental to his case. Counsel failed to question Juror No. 2 as to her prior counsel during the lawsuit which she referenced." Elsner's counsel did not ask juror No. 2 the name of the law firm or of the individual attorneys that represented her and did not challenge juror No. 2 after voir dire.

**{¶22}** Elsner also has not shown that the court would have granted the for-cause challenge and, therefore, has not shown prejudice. Counsel's prior representation of a prospective juror does not always constitute grounds for a for-cause challenge. *See Mullet v. Wheeling & Lake Erie Ry. Co.*, 8th Dist. Cuyahoga No. 81688, 2003-Ohio-3347, ¶ 41 ("We cannot find that the court abused its discretion in denying the motion for a new trial solely because an attorney failed to recall that five years earlier he had litigated a case in which the railway's law firm acted as counsel for one of at least two codefendants."); *State v. Schwable*, 6th Dist. Ottawa No. 90-OT-042, 1992 Ohio App. LEXIS 2306, 13 (May 1, 1992) ("[I]t is clear that the prosecution's representation of Diefenthaler had concluded and that at the time of this trial she did not consider the prosecutor to be her attorney. [As a result,] we cannot find that the trial court abused its discretion by failing to discharge juror Diefenthaler for cause."); *State v. Hollis*, 3d Dist. Wyandot No. 16-86-16, 1989 Ohio App. LEXIS 1568, 4-5 (Apr. 18, 1989)

(affirming the trial court's finding that "the fact that the prosecuting attorney had represented the two prospective jurors in previous legal matters was not of a character which would justify sustaining a challenge on suspicion of prejudice against, or partiality for, the defendant."); *Bietzel v. Mizer*, 5th Dist. Tuscarawas No. 1378, 1980 Ohio App. LEXIS 11207, 2 (Dec. 3, 1980) ("[T]he fact that a lawyer in the case represents a venireman in an unrelated matter is not, per se, grounds for cause.").

{¶23} Here, Birchall's counsel, while from the same law firm as the one that previously represented juror No. 2 in a medical malpractice case, were not the attorneys who represented juror No. 2. Further, during voir dire, juror No. 2 stated that she was eventually dismissed from a malpractice suit brought against her and, besides that, only took part in depositions in cases against the hospital's staff. Based on those limited dealings and without further evidence of bias or prejudice, we find that Elsner has failed to show how juror No. 2's service on the jury prejudiced him.

{¶24} In sum, after review of the record, we find that the trial court did not abuse its discretion when it concluded that no misconduct or prejudice occurred as to juror No. 2's previous representation by the Reminger law firm.

### B. Word Puzzles and Bullying

{¶25} Also as part of his assignment of error, Elsner argues that the trial court erred in denying his motion for a new trial based on juror misconduct because juror No. 2 worked on word puzzles "hidden in her juror notebook during the presentation of trial testimony" and bullied the other jurors.

{¶26} When allegations of juror misconduct arise after the verdict, courts look to Evid.R. 606(B), which governs the type of evidence that may be considered when analyzing a verdict's validity. The rule states in pertinent part:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment concerning his mental processes therewith. * * * His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes.

"This evidentiary rule embodies [an] *aliunde* rule which requires the introduction of evidence from a competent source other than a juror to impeach a jury verdict." *Cleveland Hts. v. Reed*, 8th Dist. Cuyahoga No. 67714, 1995 Ohio App. LEXIS 4521, 10 (Oct. 12, 1995), citing *State v. Lewis*, 70 Ohio App.3d 624, 591 N.E.2d 854 (4th Dist.1990). The *aliunde* rule states that "affidavits of jurors will not be received to impeach their own verdict unless foundation for their introduction is first laid by competent evidence *aliunde*, *i.e.*, by evidence from some other source." *Lund v. Kline*, 133 Ohio St. 317, 319, 13 N.E.2d 575 (1938).

{¶27} In *Reed*, this court affirmed the trial court's denial of the defendant's motion for a new trial. We noted that "[t]he record * * * only contains the affidavit of one juror, made after the jury had been discharged, that she had changed her mind." *Id.* at 12. Besides one jury member's testimony that she was pressured into finding the defendant guilty, "[n]o independent proof of the alleged misconduct was made available to the trial court[.]" *Id.* As a result, we found that the trial court did not abuse its discretion in denying the defendant's motion for a new trial. *Id.* at 13.

{¶28} We reach a similar conclusion in this case. Here, Elsner supports his argument with affidavits from two jurors. The first is from a member of the jury who alleged that juror

No. 2 pressured other jury members to find that Birchall was not liable, ignored the court's instructions concerning pertinent legal definitions, explained that she was previously represented by the Reminger law firm and complimented their legal services, discussed information concerning medical procedures that was not presented at trial, and played word puzzles during trial. The second affidavit is from Shaun Crum, who "was responsible for displaying all of exhibits for the Plaintiff[.]" According to his affidavit, Crum observed juror No. 2 taking extensive notes and told Elsner's attorney that "she might become the foreperson."

{¶29} Like *Reed*, Elsner has not provided "independent proof of the alleged misconduct." The first affidavit is from a member of the jury, which is not a competent source upon which to impeach a verdict according to the *aliunde* rule. While it is not clear, it appears that Elsner offered the second affidavit to constitute independent proof of misconduct; however, that affidavit states nothing more than an observation that juror No. 2 took extensive notes, which is permitted. Therefore, after review, we find that the trial court did not abuse its discretion in denying Elsner's motion for a new trial based on the attached affidavits alleging misconduct on the part of juror No. 2.

### C. Manifest Weight of the Evidence

{¶30} Elsner also argues that the trial court erred in denying his motion for a new trial based on the manifest weight of the evidence. Elsner finds error with the trial court's failure to address his motion for a new trial based on the manifest weight of the evidence and blames the trial judge for failing to order and review the trial transcript.

{¶31} A party's failure to provide a transcript to the trial court defeats that party's motion for a new trial and argument that the verdict was against the manifest weight of the evidence. *See Thornton v. Conrad*, 194 Ohio App.3d 34, 2011-Ohio-3590, 954 N.E.2d 666, ¶ 20 (8th Dist.)

(holding that the trial court erred in granting the plaintiff's motion because the plaintiff "did not supply the trial transcript to the judge, [and therefore,] there was no evidence to support his motion[.]"). Here, Elsner failed to provide the trial court with a transcript of the proceedings to support his manifest weight argument.

{¶32} On appeal, Elsner also failed to provide this court with a transcript of the proceedings. Under App.R. 9(B) "it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record * * * are transcribed" and to "order the transcript in writing and [] file a copy of the transcript order with the clerk of the trial court." Additionally, App.R. 16(A)(7) requires an appellant to include "citations to the authorities, statutes, and part of the record" supporting the arguments in his appellate brief. "'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to the assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.'" *Carter v. Meyer*, 8th Dist. Cuyahoga No. 93457, 2010-Ohio-1868, ¶ 11, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980); *see also Ali v. Vargo*, 8th Dist. Cuyahoga No. 85244, 2005-Ohio-3156, ¶ 22 (finding that the appellant failed in his duty to provide the reviewing court with a transcript to demonstrate his assignments of error).

{¶33} Here, Elsner failed to provide this court with a copy of the transcript of the entire proceedings and failed to identify the parts of the transcript that the trial court did not review that were relevant to its decision. *See State v. Spurlock*, 2d Dist. Montgomery No. 17954, 2000 Ohio App. LEXIS 4490, 13 ("Motions for new trial must be supported by evidence which portrays operative facts demonstrating the grounds for relief alleged. If that evidence, in the form of affidavits, depositions, or transcripts, fails to portray such operative facts, no further

hearing to determine their existence is required."). The only portions of the transcript that were made available to this court were that of the voir dire and of the defendants' direct examination of Dr. Armitage.

{¶34} As a result, we find that it was not the trial court's duty to order the remainder of the transcript, and we reject Elsner's manifest weight argument based on his failure to provide the trial court and this court with a transcript of the proceedings.

**D. The Original Trial Judge's Ruling**

{¶35} Finally, Elsner argues that it was error for the original trial judge to rule on his motion for a new trial because she had previously ordered that the visiting judge would rule on post-trial motions, the original trial judge was not present for the trial, and "[t]he visiting judge was in a much better position" to rule on his motion for a new trial.

{¶36} Contrary to Elsner's argument, "[i]t is well-established that a successor judge may rule on a motion for a new trial when a different judge presided at trial [as long as] the successor judge [has] the proper evidence before him to decide the motion." *Thornton,* 194 Ohio App.3d 34, 2011-Ohio-3590, 954 N.E.2d 666, at ¶ 14, citing *Potocnik v. Sifco Indus.*, 103 Ohio App.3d 560, 567, 660 N.E.2d 510 (8th Dist.1995). Here, the original trial judge did not preside over the trial and did not review the trial transcript before ruling on Elsner's motion for a new trial because Elsner did not provide it. Nevertheless, the original trial judge properly denied the motion because, as stated above, the original trial judge reviewed the transcript of voir dire, which showed that Elsner's counsel failed to fully examine juror No. 2 and because Elsner failed to provide the remainder of the transcript.

{¶37} Judgment affirmed.

It is ordered that appellees recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, A.J., and
ANITA LASTER MAYS, J., CONCUR