[Cite as *State v. Blanton*, 2021-Ohio-65.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                             :

    Plaintiff-Appellee,              :

                                               No. 109294

    v.                                            :

EDWARD BLANTON,                     :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 14, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-636198-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel Cleary, Assistant Prosecuting Attorney, *for appellee.*

David L. Doughten, *for appellant.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, Edward Blanton, appeals from the trial court's judgment, rendered after a jury verdict, finding him guilty of aggravated robbery and sentencing him to nine years in prison. Finding no merit to the appeal, we affirm.

## I. Procedural History

{¶ 2} Blanton was charged in a four-count indictment as follows: Count 1, aggravated murder in violation of R.C. 2903.01(A); Count 2, murder in violation of R.C. 2903.02(B); Count 3, felonious assault in violation of R.C. 2903.11(A)(1); and Count 4, aggravated robbery in violation of R.C. 2911.01(A)(1). All counts carried one- and three-year firearm specifications. Count 4, the aggravated robbery charge, arose out of an incident that occurred on August 6, 2018, at a gas station in Cleveland; Counts 1, 2, and 3 related to events that occurred the next day.

{¶ 3} Blanton pleaded not guilty, and the case proceeded to a jury trial. The jury found him not guilty of Counts 1, 2, and 3, but guilty of Count 4, aggravated robbery, and the accompanying firearm specifications. The trial court sentenced Blanton to six years' incarceration on the underlying offense, consecutive to three years on the firearm specifications, for an aggregate sentence of nine years. This appeal followed.

## II. Law and Analysis

### A. Jury Instructions

{¶ 4} The offense of aggravated robbery is defined in R.C. 2911.01(A)(1), which states that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the offense or attempt shall * * * have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" As

apparent from the statute, a theft offense is an essential element of the crime of aggravated robbery.

{¶ 5} "Theft offense" is defined in R.C. 2913.01(K) as including, relevant to this case, the crime of theft, which is defined in R.C. 2913.02(A) as follows:

No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(3) By deception;

(4) By threat;

(5) By intimidation.

{¶ 6} The trial court gave the following instruction to the jury relative to Count 4, aggravated robbery:

Before you can find the defendant guilty, you must find beyond a reasonable doubt, that on or about August 6, 2018, and in Cuyahoga County, the defendant, Edward Blanton, did in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense upon [the victim], did have a deadly weapon, to wit, a firearm, handgun, on or about his person or under his control, and either displayed the weapon, brandished it, indicated he possessed it or used it.

(Tr. 1003.) Although the trial court defined the terms attempt, deadly weapon, and brandish for the jury, it did not define theft.

{¶ 7} In his first assignment of error, Blanton contends that the trial court failed to properly instruct the jury regarding the offense of aggravated robbery

because it did not define theft for the jury. He asserts that the trial court's failure to adequately instruct the jury on all the elements of the offense denied him his constitutional right to due process, thereby requiring a new trial. Blanton concedes that he did not object to the charge as required by Crim.R. 30,[1] but maintains that the error was a plain error affecting his substantial rights and, as such, may be noticed by this court pursuant to Crim.R. 52(B).[2]

{¶ 8} Plain error is an obvious error or defect in the trial court proceedings that affects a substantial right. *State v.* Rogers, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. An alleged error is plain error only if the error is obvious and it affected the outcome of the trial. *Id.* We take notice of plain error with the "utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. The burden of demonstrating plain error is on the party asserting the error. *Rogers* at *id.*; *State v. McFeeture*, 2015-Ohio-1814, 36 N.E.3d 689, ¶ 84 (8th Dist.).

---

[1] Crim.R. 30(A) states, in pertinent part, that "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."

[2] Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**{¶ 9}** We agree with Blanton that the trial court should have given the jury the statutory definition of theft as part of its instruction regarding aggravated robbery. Nevertheless, we find no plain error.

**{¶ 10}** "'As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged.'" *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 17, quoting *State v. Adams*, 62 Ohio St.2d 151, 153, 404 N.E.2d 144 (1980). However, "[t]he failure to instruct on each element of an offense is not necessarily reversible as plain error." *Wamsley* at *id.*, citing *Adams* at paragraph two of the syllabus. "Rather, an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions." *Wamsley* at *id.*, citing *Adams* at paragraph three of the syllabus.

**{¶ 11}** The Ohio Supreme Court has recognized that "terms of common usage need not be defined for the jury." *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 61, citing *State v. Riggins*, 35 Ohio App.3d 1, 8, 519 N.E.2d 397 (8th Dist.1986). Thus, if the undefined term is one of common usage and is used in the jury instruction in that sense, the failure to define the term does not mandate reversal. *State v. Watkins*, 10th Dist. Franklin No. 01AP-1376, 2002-Ohio-5080, ¶ 39, citing *Riggins* at *id.* Moreover, where there is sufficient evidence upon which a jury could reasonably conclude that all the elements of the offense have been

proven beyond a reasonable doubt, the failure to define a term is harmless error. *Watkins* at *id.*

{¶ 12} We find nothing in this case that would mandate reversal due to the trial court's failure to define theft for the jury. "Although the term theft is statutorily defined, it is a term of common usage," *Watkins* at ¶ 40, and was used in the jury instruction in the common sense. The jury apparently understood the term; it did not request clarification or definition of the term, and Blanton does not explain what incorrect meanings the jury could have attributed to the term.

{¶ 13} There was also sufficient evidence in the record to support the jury's finding that Blanton committed aggravated robbery; i.e., theft while armed with a deadly weapon. State's exhibit No. 1, a surveillance video from the gas station, sets forth the events that occurred on August 6, 2018, that formed the basis for the aggravated robbery charge. It was played repeatedly for the jury during trial. The video shows the victim, Yuri West, entering the store at the station, and then Blanton and two codefendants arriving at the station in a vehicle and parking. It shows Blanton placing a gun in the waistband of his pants as he exits the vehicle, pulling the gun out of his waistband before he enters the station, and then immediately pointing the gun in West's face. The video shows West attempting to push the gun away, and Blanton's codefendant Quashaun Moore pushing and then tackling West to the floor. The video shows Blanton and Moore struggling with West as he is on the floor, and codefendant Eric Moore kicking him. The video shows Blanton searching West and removing a firearm from his person, and then handing the gun

to Quashaun as they leave the store. It shows Eric picking up West's cell phone, which had fallen to the floor during the altercation, and exiting the store. Finally, the video shows the three defendants entering their vehicle and driving away. After they are gone, West can be heard on the video asking where his cell phone is.

{¶ 14} At trial, Blanton did not dispute that he forcefully took West's gun from him or that he had a firearm on his person and brandished it to facilitate his taking of West's gun, as depicted on the video. Indeed, the following colloquy occurred on the state's cross-examination of Blanton:

Q. Yuri had no idea you were coming right?

A. No, no.

Q. You surprised him?

A. Correct.

Q. And you took his gun?

A. Yes.

Q. That was his property, right? You took it off of him?

A. He had it.

Q. Right? And you forcefully took it from him, correct?

A. Correct.

Q. You stuck a gun in his face, you used a firearm to facilitate it, help you do that, correct?

A. Correct.

Q. And Quashaun and Eric were helping you, correct?

A. Correct.

Q. So you forcefully removed his property with the help of a firearm, correct?

A. Correct.

(Tr. 842-843.)[3] Following this exchange, Blanton further admitted that Eric took West's cell phone, which had fallen to the floor during Blanton and Quashaun's struggle with West. In short, Blanton admitted to all the elements of aggravated robbery.

{¶ 15} In light of the foregoing, we need not take notice of plain error to prevent a manifest miscarriage of justice. The jury was not hindered in its deliberations by the trial court's failure to provide the statutory definition of theft to the jury as part of its instructions on aggravated robbery, and Blanton has offered no evidence that the result of the trial would have been different had the trial court defined the term.

{¶ 16} Blanton's reliance on *State v. Woods*, 2016-Ohio-661, 47 N.E.3d 894 (10th Dist.), to support a finding of plain error in this case is misplaced. In *Woods,* the Tenth District found that the trial court's failure to define the mens rea element of purpose with respect to the charge of obstructing official business[4] was plain error

---

[3] Blanton's defense at trial to the aggravated robbery charge was that he disarmed West merely as a protective measure, and not to permanently deprive West of his gun, because West had on multiple occasions previously either robbed him at gunpoint or threatened him with a weapon.

[4] R.C. 2921.31, regarding obstructing official business, states that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

that prejudiced the defendant because (1) the mens rea element of purpose is the essential element of the offense that transforms potentially innocent conduct into a criminal attempt to thwart the course of justice, and (2) the evidence at trial demonstrated "considerable ambiguity" about the defendant's purpose in approaching the complaining police officer. *Id.* at ¶ 6, 9.

{¶ 17} *Woods* is not on point. This case does not involve the trial court's failure to define a mens rea element, and there is no indication that the court's failure to define theft misled the jury to Blanton's prejudice. Furthermore, the evidence at trial presented no ambiguity whatsoever about whether Blanton committed aggravated robbery. The video clearly showed that he had a gun on his person, and that he brandished the gun while forcibly taking West's gun from him. Moreover, Blanton admitted on cross-examination to all the elements of aggravated robbery.

{¶ 18} Accordingly, we find no plain error warranting a reversal. The first assignment of error is overruled.

## B. Removal of Juror for Cause

{¶ 19} After the jury had been excused to begin its deliberations, but before the deliberations began, Juror No. 6 informed the court that she did not want to deliberate on the case. She said she realized after Blanton's testimony the day before that she "probably" knew his girlfriend because they both worked at the main Post Office in Cleveland, and she did not want any "retaliation." (Tr. 1031.) She explained that "during his sentencing she may come and support him, which is

understandable, and lo and behold she would see me, and bad news travels fast at the Post Office." *Id.* She told the court that she "figured [the court] could use one of the alternates and [she] could just go home." (Tr. 1032.)

{¶ 20} Upon questioning by the prosecutor, Juror No. 6 agreed that she did not actually know who Blanton's girlfriend was; she only assumed that she might know her from the Post Office because they both worked at the same location. (Tr. 1033.) The prosecutor acknowledged that Juror No. 6's situation was "unpleasant," and then asked her if despite that, she could be fair and impartial. (Tr. 1035.) Juror No. 6 stated, "[t]hat's not the issue. I definitely can be fair. It's just she — she obviously hasn't showed up during the week, which is surprising. But this may be the day this person may show up, which is understandable." (Tr. 1035.) The trial judge acknowledged that "it would be unpleasant and it would make you uncomfortable," but asked, "at the same time, can you be fair and impartial?" *Id.* Juror No. 6 responded affirmatively, but told the court "y'all just don't understand the Post Office." *Id.*

{¶ 21} Defense counsel told Juror No. 6 that he did not see how she could be fair if she was worried about retaliation, to which Juror No. 6 responded that she felt sorry for Blanton and could tell he was remorseful, but she could still be fair. (Tr. 1037.)

{¶ 22} After Juror No. 6 left the courtroom, defense counsel asked that she be excused for cause and replaced with an alternate juror. After more discussion between the prosecutor, defense counsel, and the court, Juror No. 6 returned to the

courtroom. The prosecutor assured her that she would not be present if Blanton were sentenced, and then again asked her if she could be fair and impartial, despite the unpleasantness of the situation. (Tr. 1054.) She responded affirmatively. *Id.* Upon questioning by the court, Juror No. 6 again reiterated that she could be fair and impartial in deciding the case. (Tr. 1062.) When asked if there was "any question about that in your mind," Juror No. 6 responded, "No." *Id.* She also assured the court that the jury had not started deliberating when she brought her concern to the court's bailiff (Tr. 1064), and that despite her earlier mention of sentencing, the jury was "nowhere near that far." (Tr. 1071.)

{¶ 23} Because Juror No. 6 told the court that she had mentioned her concern about knowing Blanton's girlfriend to a few other jurors, the trial court brought each juror individually into the courtroom and asked them whether any conversations they had with Juror No. 6 would affect their ability to be fair and impartial in the case. Each juror responded, "No." The trial court then denied defense counsel's motion to remove Juror No. 6 for cause and replace her with an alternate juror.

{¶ 24} In his second assignment of error, Blanton contends that the trial court abused its discretion by not removing Juror No. 6 for cause, thereby violating his right to have his case heard by a fair and impartial jury. He contends that Juror No. 6 was biased against him because of her fear of retaliation, and that her statements that she could be fair and impartial were not believable because the

prosecutor and trial judge "talked her into staying" on the jury. (Appellant's Brief, p. 13.) Blanton's arguments are without merit.

{¶ 25} The right to be tried by a fair and impartial jury is a fundamental tenet of our criminal justice system. *State v. Whitmore*, 8th Dist. Cuyahoga No. 78035, 2001 Ohio App. LEXIS 1999, 7 (May 3, 2001). A trial judge is empowered to remove a juror and replace the juror with an alternate whenever facts are presented that convince the trial judge that the juror's ability to perform his or her duty — including the duty to be impartial — is impaired. *State v. White*, 1st Dist. Hamilton No. C-150250, 2016-Ohio-3329, ¶ 32. *See also* R.C. 2945.29 and Crim.R. 24(G)(1).

{¶ 26} A judge has broad discretion in determining a juror's ability to be impartial. *State v. Nields*, 93 Ohio St.3d 6, 20, 752 N.E.2d 859 (2001). Resolution of the impartiality issue rests in large part on the trial court's assessment of the juror's credibility and demeanor, and the context in which the issue arises. *White* at ¶ 34, citing *Skilling v. United States*, 561 U.S. 358, 386, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010); *State v. Williams*, 79 Ohio St.3d 1, 8, 679 N.E.2d 646 (1997). We review the trial court's decision on whether to remove a juror for cause for an abuse of discretion. *State v. Smith*, 80 Ohio St.3d 89, 105, 684 N.E.2d 668 (1997). "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion, and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v.* Hackett, Slip Opinion No. 2020-Ohio-6699, ¶ 19, citing *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 372, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961) (Frankfurter, J., dissenting). Abuse-of-discretion review is deferential

and does not permit an appellate court to simply substitute its judgment for that of the trial court. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 27} We find no abuse of discretion in the trial court's decision to retain Juror No. 6. Although Juror No. 6 admittedly cited her concern about how news of a conviction would be received at the Post Office, she did not identify any actual threats to her safety; she merely said that the Post Office is "like a big high school" where people like to gossip. (Tr. 1070.) More importantly, she stated repeatedly that her concern about any possible retaliation at work would not affect her ability to decide the case fairly and impartially. Her repeated assertions that she could be fair and impartial in deciding the case were borne out by the jury verdict: not guilty of Counts 1, 2, and 3 but guilty of Count 4, aggravated robbery. She, and the other members of the jury, evaluated the evidence and convicted Blanton of a crime he admitted to on the stand, but found him not guilty of the three other more serious charges. Blanton's assertion that Juror No. 6 was biased against him and unable to decide the case solely upon the evidence is simply not true.[5]

{¶ 28} It is also not true that Juror No. 6 was "talked into staying" on the jury. The record reflects that the prosecutor asked only a few questions of her before she

---

[5] Blanton's argument that Juror No. 6's fear of retaliation made her biased against him and cause for removal from the jury is also logically inconsistent. "[A] juror concerned about retaliation would presumably be more likely to vote to acquit, rather than to convict." *State v. Noriega*, 10th Dist. Franklin No. 18AP-979, 2020-Ohio-4201, ¶ 31. Under this reasoning, it would seem to have been in Blanton's best interest to retain Juror No. 6 on the jury.

assured the court that she could indeed be fair and impartial, despite her concern. (Tr. 1032-1035.) Upon our review of the record, we find her assurances of fairness and impartiality to be entirely credible.

{¶ 29} Under these circumstances, we find no abuse of discretion in the trial court's decision to deny Blanton's motion to dismiss Juror No. 6 for cause. The second assignment of error is therefore overruled.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR