[Cite as *State v. Wallace*, 2021-Ohio-4612.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                          No. 109847

    v.                           :

LAWRENCE WALLACE, JR.,                  :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 30, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-635081-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jeffrey S. Schnatter and Debora Brewer, Assistant Prosecuting Attorneys, *for appellee.*

Charles Ruiz-Bueno, Co. L.P.A., and J. Charles Ruiz-Bueno, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant, Lawrence Wallace, Jr. ("Wallace"), appeals his convictions for multiple counts of rape and other felonies following a jury trial. For the reasons set forth below, we affirm.

**Procedural and Factual History**

{¶ 2} On December 12, 2018, a grand jury returned an 11-count indictment against Wallace. The charges were three counts of rape, one count of attempted rape, five counts of kidnapping, and two counts of gross sexual imposition. The rape and attempted rape charges each included a furthermore specification. The attempted rape charge included an attempted rape specification. The kidnapping counts each included a sexual motivation specification. Finally, all counts contained sexually violent predator specifications.

{¶ 3} The indictment stemmed from allegations that Wallace raped or attempted to rape three girls under the age of 13 at the time of their assaults. The mothers of the girls are sisters, B.H., M.H., and T.H. Wallace and B.H. were in a relationship and had two children together. The victims are B.H.'s daughter, E.P. D.O.B. 9/14/2007, from a different relationship, M.H.'s daughter A.W., D.O.B. 3/17/2007, and T.H.'s daughter, L.B., D.O.B. 3/13/2002.

{¶ 4} The allegations surfaced after M.H. noticed changes in A.W.'s behavior. M.H. noticed that A.W.'s grades were slipping, dropping to C's, from A's and B's, and that A.W. had become increasingly withdrawn. Shortly after Thanksgiving 2018, M.H. decided to talk to A.W. to find out what was going on. When she did, A.W. disclosed that Wallace had sexually assaulted her.

{¶ 5} M.H. immediately tried to call her sister, B.H. When she was unable to reach B.H., she called her other sister, T.H., and told her that something had happened to A.W. M.H. was extremely upset, crying, and screaming. M.H. ended

up hanging up and talking to A.W. further. Based on what she learned, M.H. called T.H. again. During the second call, she told T.H. that according to A.W., Wallace had assaulted B.H.'s daughter, E.P. as well.

{¶ 6} Concerned, T.H. pulled her daughter L.B. into the bathroom and asked her if anyone had touched her inappropriately or in the wrong way. L.B. answered in the affirmative and identified the abuser as Wallace.

{¶ 7} M.H. and her fiancé went to B.H. and Wallace's home to confront Wallace. B.H., who was asleep, awoke to a commotion in her bedroom. M.H. began to tell B.H. what happened. During the commotion, E.P. disclosed that Wallace had assaulted her too. Wallace disappeared during this time, and B.H. did not see or hear from him again until trial.

{¶ 8} B.H., M.H., and T.H. immediately took the girls, E.P., A.W., and L.B. to the emergency room to be examined. They were also interviewed by a social worker from the Child Advocacy Center. Subsequently, the police became involved and charges were filed. Trial commenced on January 13, 2020.

{¶ 9} The trial began with the court interviewing L.B. to determine whether she was competent to testify. After determining that she was competent, the trial court heard testimony in succession from L.B., her mother T.H., A.W., A.W.'s mother M.H., and E.P.

{¶ 10} After the conclusion of testimony on the third day of trial, three jurors notified the court that Juror No. 2 had disclosed that he believed Wallace was guilty. The trial court addressed the issue the following day before recommencing

the trial. Based on the statements of the three jurors, the trial court elected to remove Juror No. 2 from the panel. Prior to doing so, the trial court addressed Juror No. 2 and explained its decision.

{¶ 11} The court's bailiff escorted Juror No. 2 back to the jury room to gather his belongings. As he was leaving, Juror No. 2 stated that he guessed he could not joke about Wallace's guilt. The bailiff reported this incident to the trial court, noting that Juror No. 2 was at the front of the jury room and in a position where he could be heard by all the jurors.

{¶ 12} Upon learning of this additional outburst, the trial court expressed concern that Juror No. 2's statements had tainted the jury, especially given the serious nature of Wallace's charges. Wallace's attorney orally requested a mistrial. The trial court, along with Wallace's attorney and the prosecutor, conducted a voir dire of the jurors regarding the statement. Subsequently, the trial court overruled the defense motion for mistrial.

{¶ 13} Afterward, testimony was heard from E.P.'s mother, B.H.; Julie Loyke, a pediatric nurse practitioner formerly at University Hospital's Rainbow Babies and Children's Hospital; Ashley Martinez, an assessment specialist at Frontline Services; Stephanie Moore, a social worker from the Cuyahoga County Division of Children and Family Services ("CCDCFS"); and Det. Richard Durst, with the city of Cleveland police department.

{¶ 14} At the close of testimony, the state amended Count 1 from rape to attempted rape; amended Count 3 from rape to gross sexual imposition; and deleted the furthermore specification from Count 5.

{¶ 15} The jury found Wallace guilty of one count of rape, two counts of attempted rape, three counts of kidnapping, and two counts of gross sexual imposition. The jury found Wallace not guilty of one count of gross sexual imposition and two counts of kidnapping.

{¶ 16} The trial court conducted a bench trial on the specifications attached to the counts. The trial court found Wallace guilty on all of the sexually violent predator specifications, and guilty of the sexual motivation specifications attached to the kidnapping charges. The state elected to proceed with sentencing on Count 2, kidnapping; Count 6, gross sexual imposition; and Count 10, rape. The court sentenced Wallace to life in prison without the possibility of parole on the rape charge, 15-years-to life on the kidnapping charge, and five-year-to life on the gross sexual imposition charge. The five-year and 15-year sentences were ordered to be served consecutive and to be served before the remainder of the sentence.

{¶ 17} Wallace presents the following assignments of error for review:

### Assignment of Error No. 1
The trial court committed prejudicial error by denying Defendant-Appellant's motion for a mistrial.

### Assignment of Error No. 2
Defendant-Appellant was denied a fair trial under the Cumulative Error Doctrine where Curative Instructions were not given at trial.

## Law and Analysis

**{¶ 18}** In the first assignment of error, Wallace claims the trial court erred in denying his motion for a mistrial due to juror misconduct.

**{¶ 19}** The decision to grant or deny a motion for mistrial lies within the sound discretion of the trial court. *State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907, ¶ 36, citing *State v. Garner*, 74 Ohio St.3d 49, 656 N.E.2d 623 (1995). We will not disturb that "exercise of discretion absent a showing that the accused has suffered material prejudice." *Id.*, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). A mistrial is only warranted when "the ends of justice so require and a fair trial is no longer possible." *Id.*, citing *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

**{¶ 20}** When the basis for a mistrial is juror misconduct, it must be determined (1) whether misconduct actually occurred and (2) whether the misconduct materially prejudiced the defendant's substantial rights. *Elsner v. Birchall*, 2018-Ohio-2521, 114 N.E.3d 791, ¶ 12 (8th Dist.).

**{¶ 21}** In the instant case, after the end of testimony on the third day of trial, three jurors reported that Juror No. 2 told them that he had made up his mind about the case. The trial court and the parties discussed the issue before leaving for the day. The trial court addressed the issue on the record the following morning. Based on the statements of the three jurors and discussion with counsel, the trial court elected to talk to the four jurors but was inclined to replace Juror No. 2 with an alternate.

A trial judge is empowered to remove a juror and replace the juror with an alternate whenever facts are presented that convince the trial judge that the juror's ability to perform his or her duty — including the duty to be impartial — is impaired." *State v. White*, 1st Dist. Hamilton No. C-150250, 2016-Ohio-3329, ¶ 32.

*State v. Blanton,* 8th Dist. Cuyahoga No. 109294, 2021-Ohio-65, ¶ 25.

{¶ 22} Before Juror No. 2 left, Wallace's counsel asked him to explain what he said. The following testimony occurred:

DEFENSE COUNSEL: What exactly did you say, what was the joke?

JUROR NO. 2: I said that it was gonna snow.

DEFENSE COUNSEL: Huh?

JUROR NO. 2: So that I'm not gonna come back downtown, I'll give you – write you down piece [sic] of paper he's guilty and –

THE COURT: Okay.

JUROR NO. 2: I was joking.

Tr. 503.

{¶ 23} Juror No. 2 was then escorted back to the jury room to get his belongings. However, when Juror No. 2 was leaving, and before the trial court could talk to the remaining jurors, Juror No. 2 repeated his statement in such a way that the entire jury panel might have heard it.

{¶ 24} The trial court noted:

THE COURT: So, the new revelation is that this juror went to get his phone and he made another comment to the jurors saying: I guess I can't joke about his guilt.

Tr. 504.

{¶ 25} Given the serious nature of the charges, the trial court, along with counsel, questioned the entire panel of jurors. The trial court first ascertained whether or not each juror heard Juror No. 2's remarks and the circumstances under which the juror heard them. After getting the basic facts from each juror, the court allowed counsel to question each juror. Counsel questioned the jurors about the impact of Juror No. 2's statements and their ability to fairly try the case based on what they had heard or based on the knowledge that some misconduct had occurred. In doing so, the trial court learned that not every juror heard Juror No. 2's statements. Those who did, indicated they were not influenced by Juror No. 2's statements. Furthermore, the jurors indicated they would still be able to be fair and impartial. After hearing the jurors' answers, the trial court denied Wallace's motion for mistrial. The trial court stated:

> THE COURT: I was not confident going in, but I am confident now, having heard each of them, that they will follow the rules, I think, if anything, there'll probably be a heightened awareness at this point.
>
> I understand why you're asking [for a mistrial] and I totally respect you for doing it. It's something you should do. But I don't think that this rises to discharging a whole jury.

Tr. 574.

{¶ 26} The trial court undertook measures to determine whether misconduct materially affected the defendant's substantial rights by questioning the jury. Certainly, the defendant has a right to be tried by a fair and impartial jury. *Blanton*, 8th Dist. Cuyahoga No. 109294, 2021-Ohio-65, at ¶ 25, citing *State v. Whitmore*, 8th Dist. Cuyahoga No. 78035, 2001 Ohio App. LEXIS 1999, 7

(May 3, 2001). Upon completion of the voir dire of the jury, the trial court found that the jury was not prejudiced by the misconduct of Juror No. 2. "'The trial judge is in the best position to determine the nature of the alleged jury misconduct and the appropriate remedies for a demonstrated misconduct.'" *State v. Hickman*, 9th Dist. Summit No. 27321, 2015-Ohio-4668, ¶ 39, quoting *State v. Wharton*, 9th Dist. Summit No. 23300, 2007-Ohio-1817, ¶ 25. After the trial judge's thorough review and appropriate response to the misconduct, we cannot say that the trial court abused its discretion when it denied Wallace's motion for a mistrial.

{¶ 27} Wallace's first assignment of error is overruled.

{¶ 28} In the second assignment of error, Wallace argues that he was denied a fair trial under the cumulative error doctrine due to the trial court's failure to make any curative instructions.

{¶ 29} Under the cumulative error doctrine, "'a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of *numerous instances of trial court error* does not individually constitute cause for reversal.'" (Emphasis sic.) *State v. Chesler*, 11th Dist. Geauga No. 2014-G-3181, 2015-Ohio-711, ¶ 48, quoting *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. The doctrine is only applicable when "the record reveals numerous instances of *trial court error*." (Emphasis added.) *Id.*, citing *DeMarco* at *id.*, and *State v. Webb*, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994).

{¶ 30} Wallace argues that the trial court erred in failing to give curative instructions after it sustained several of his objections; however, the responsibility to request curative instructions lies with the defendant. "When defense counsel fails to request a curative instruction, any error in the trial court's failure to give one is waived." *State v. Freeman*, 8th Dist. Cuyahoga No. 91842, 2009-Ohio-5218, ¶ 23.

{¶ 31} In the instant case, because Wallace failed to request a curative instruction, he has waived the issue on appeal. Additionally, because the failure to request a curative instruction is not an error attributed to the trial court, the cumulative error doctrine does not apply. *Chesler* at ¶ 48.

{¶ 32} Moreover, Wallace's constitutional rights were not violated by the objectionable evidence.

{¶ 33} Wallace objected ten times, and the trial court sustained each objection. Most of the testimony was hearsay; however, its admission was harmless because it was duplicative of other admissible evidence. "The Ohio Supreme Court has held that the erroneous admission of inadmissible hearsay that is cumulative to properly admitted testimony constitutes harmless error." *Peffer v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450, ¶ 28, citing *State v. Williams*, 38 Ohio St.3d 346, 528 N.E.2d 910 (1988).

{¶ 34} Wallace also objected to the testimony of Stephanie Moore ("Moore"). Moore, a social worker with CCDCFS, testified about A.W.'s and E.P.'s emotional state after the sexual assault. Moore was permitted to testify that both girls were ashamed because they could not protect themselves from Wallace. She

also testified that they both told her that Wallace, a grown man, was stronger than them.  This testimony was hearsay, and it was not cumulative as neither A.W. nor E.P. gave this testimony.

{¶ 35}  Finally, the rest of the testimony Wallace referenced was harmless. Wallace's counsel objected in the midst of the witnesses' answers prior to the admission of objectionable hearsay testimony.

{¶ 36}  As illustrated, the errors, individually and collectively, were harmless.  Even if all the offending testimony was excised from the trial, there was overwhelming evidence of Wallace's guilt.

{¶ 37}  Accordingly, we overrule Wallace's second assignment of error.

{¶ 38}  Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed; any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

LISA B. FORBES, P.J., and
EILEEN T. GALAGHER, J., CONCUR